IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No. 05 C 4811 |
| CQG, INC., and CQGT, LLC, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International, Inc. ("Trading Tech") brought an action alleging patent infringement against defendants CQG, Inc. and CQGT, LLC. Defendants move to dismiss for improper venue pursuant to FED. R. CIV. P. 12(b)(3), or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, we deny defendants' motion to dismiss or transfer.

## BACKGROUND

Defendants move to dismiss this claim for improper venue. In analyzing such a claim, we take all allegations in the complaint as true unless contradicted by defendants' affidavits, wherein we must resolve all factual conflicts and draw all reasonable inferences in favor of plaintiff. Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc., 262 F.Supp.2d 898, 913 (N.D.Ill.2003). Additionally, we may examine facts outside of the complaint. *Id.* It is plaintiff's burden to establish proper venue. *Id.*

Defendants contend that venue is improper in the Northern District of Illinois because defendants first filed a declaratory action on infringement and validity of the same patents in the federal district court for the District of Colorado. In light of this claim, the time line of

negotiation and litigation is of the foremost importance.

Plaintiff currently owns U.S. Patent Nos. 6,766,304 and 6,772,132 (both for "Click Based Trading with Intuitive Grid Display of Market Depth"). Plaintiff alleges that defendants have and continue to infringe such patents by making, using, selling, and/or offering for sale products and methods covered by claims of those patents in violation of 35 U.S.C. § 271. Commencing in July 2005, the parties engaged in discussion and negotiation to resolve any patent disputes between them. They discussed a communication schedule to form a structure for the negotiations. Plaintiff initially suggested a communication deadline of August 12, 2005, but eventually agreed to an August 19, 2005, deadline (Geannopulos aff. ¶ 13; Fischer aff. ¶ 4). The parties dispute the tenor of the discussion, plaintiff describing cooperative and forward-moving negotiation, and defendants depicting threatening and onerous conversations.

On August 17, 2005, the parties conversed about the most recent proposals. According to plaintiff, defendants turned down plaintiff's most recent proposal, but did not oppose further discussions with plaintiff's CEO, and agreed to continue working on the agreement that night (Gennopulos aff. ¶¶ 15-17). Defendants deny agreeing to continue such discussions, stating that they "made it clear that all discussions were over" as of the refusal of plaintiff's offer (Fischer aff. ¶ 5). Thereafter, on August 17, 2005, defendants filed a declaratory judgment action to resolve any obligations between the parties in the federal district court for the District of Colorado. Such action is currently pending. Plaintiff was taken by surprise at the commencement of defendants' suit, stating that "[a]t the time that CQG filed its Colorado declaratory judgment action against TT on August 17, 2005, I was under the impression that the negotiation schedule the parties had agreed to was still in place and that negotiations would continue until at least August 19, 2005" (Gennopulos aff. ¶ 18). Because this is Rule 12(b)(3)

motion, and there is significant dispute as to the nature and termination of the negotiation, we resolve the above disputes in favor of the plaintiff.

## DISCUSSION

Venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Thus, because defendants have an established place of business in Illinois and a principal place of business in Colorado, venue would be proper in either district.

Defendants argue, however, that this case should be dismissed for improper venue "in light of Defendants' first-filed declaratory judgment action in the District of Colorado which involves the same parties and addresses the very same issues in this action." (defs' mot. at 3). In order to save judicial resources and provide consistent judgment, two identical lawsuits should not proceed in federal courts in two different districts. The general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred. Schnadig Corp. v. Collezione Europa U.S.A., 2001 WL 766898, *1 (N.D.Ill.2001); Design Automotive Group, Inc. v. Lund Industries, Inc., 1996 WL 377063, *1-2 (N.D.Ill.1996); Colborne Corp. v. Mc Retail Foods, 1995 WL 470226, *1 (N.D.Ill.1995). This rule applies even where the first filed action is a suit for declaratory judgment. Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed.Cir.1993); Design Automotive Group, Inc. v. Lund Industries, Inc., 1996 WL 377063, *1-2 (N.D.Ill.,1996). In patent infringement actions the Federal Circuit has strongly endorsed the first-to-file doctrine.[1] *See* Genetech, 998 F.2d 931; Electronics for

---

[1] Both parties agree that patent cases are bound by Federal Circuit, rather than regional circuit, law. *See* Serco Services Co., L.P. v. Kelley Co., Inc., 51 F.3d 1037, 1038 (Fed.Cir.1995) ("The proper relationship between an action under this act for a declaration of patent rights and a later-filed infringement suit triggers this court's special responsibility to foster national uniformity in patent practice; we do not defer to the procedural rules of other circuits").

Imaging, Inc. v. Coyle, 394 F.3d 1341 (Fed.Cir.2005). In fact, the Federal Circuit explicitly rejected applying Tempco Electric Heather Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749 (7th Cir.1987)(holding that where "the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later"), to patent actions. Rather, the Federal Circuit found that consideration of anticipatory filing and preemption of another's suit is only one factor in determining whether to dismiss a declaratory judgment action in favor of a subsequently filed patent infringement suit involving the same parties and patents. Electronics for Imaging, Inc., 394 F.3d at 1347-48.

Because the Federal Circuit does not counsel "rigid mechanical solutions" to venue and jurisdiction problems (Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)), we consider other factors: convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, considerations relating to the real party in interest (Genetech, Inc., 998 F.2d at 938) and the underlying purposes of the Declaratory Judgment Act. *See* EMC Corp. v. Norand Corp., 89 F.3d 807, 814 (Fed.Cir.1996) (finding that the special flexibility granted district courts in declaratory judgment actions does not limit courts to decline jurisdiction only when special circumstances of convenience, jurisdiction or consolidation are present).

First and foremost, we note that CQG's declaratory judgment filing appears to be a race to the courthouse in contravention of the purposes of the Declaratory Judgment Act. That Act states:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

Prior to the Declaratory Judgment Act, alleged patent infringers could not initiate legal proceedings to define their rights and obligations with regard to potential infringement. They were helpless to escape patentee's tactical maneuvering, whereby patentee hesitated in filing an infringement action solely to harass alleged infringer's customers or increase bargaining power. Allowing competitors to sue for declaratory judgment served to clear the air, protect their customers, and to define their rights without accumulating injuries related to waiting for patentee to decide whether to bring suit. *See* EMC Corp., 89 F.3d at 814-15; BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (The Act "accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action"). The Declaratory Judgment Act was not intended to affix competitor with a right to feign negotiation in order to delay patentee's filing of an infringement suit in an effort to secure a preferable forum. In this case, defendants requested an extension of time for negotiation, then simultaneously terminated negotiations prior to that date and filed a declaratory judgment action. Although the Federal Circuit has found that commencing suit prior to a negotiation deadline should not deprive the alleged patent violator of the right to sue (Electronics for Imaging, Inc., 394 F.3d at 1347), the Supreme Court noted that "[t]he manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart." Kerotest Mfg.Co., 342 U.S. at 185. Thus, it appears to us that defendants were engaging in tactical strategies similar to the maneuvering the Declaratory Judgment Act was designed to end.

Second, the balance of conveniences weighs in favor of consolidating the suits in Illinois, not Colorado. Because both parties have offices in Chicago, and can access important

documents from those offices, this weighs in favor of maintaining jurisdiction in Chicago. Defendant argues that plaintiff's situs for developing and maintaining its patented technology is irrelevant, stating that the focus in a patent infringement case is on "the activities of the alleged infringer, its employees, and its documents." (defs' reply at 9) (*citing* Corp. Safe Specialists, Inc. v. Tidel Techs., Inc., 2005 WL 2124483, *2 (N.D.Ill.2005). While this is the general rule, defendants fail to note that this court in the same case found that "the weight of this factor is somewhat counterbalanced by [defendants'] declaratory judgment action, which indicates that they will call the validity of [plaintiff's] patent into question." Corp. Safe Specialists, Inc., 2005 WL 2124483 at *2. Additionally, while defendants dispute plaintiff's statement that defendants' customer base in Chicago is greater than its customer base in Colorado, defendants do not dispute that they maintain an office in Chicago, generate 30 per cent of their revenue from the Chicago market, and manage some of those accounts from the Chicago office. Therefore, although it would be more convenient for defendants to litigate this case in Colorado, it would be less inconvenient for them to litigate in Chicago than it would be to force plaintiff to litigate in Colorado, where they have no office, no client base, and generate no revenue.

Third, we must consider the necessity of consolidating these actions. Generally, "[w]hen pending litigation involves the same parties and similar legal, technical and infringement issues, transfer to that venue is logical and strongly favored." Berol Corp. v. BIC Corp., 2002 WL 1466829, *5, n5 (N.D.Ill.2002). In this case, there is almost identical litigation pending in this court and in Colorado. The actions are following a similar time line, with essentially the same motion, fully briefed, awaiting decision by the courts. The Colorado complaint was filed on August 17, 2005, and on September 7, 2005, defendant Trading Tech made a motion to dismiss, transfer to the Northern District of Illinois, or stay. That motion

was fully briefed as of October 12, 2005. In an almost identical time line, the complaint in this action was filed on August 19, 2005, defendant CQG made a motion to dismiss or transfer to the District of Colorado, and the motion was fully briefed as of October 13, 2005. As noted above, we do not believe that the Colorado action should proceed in lieu of this action simply because it was filed first. Therefore, because the facts of this case suggest rejection of the first-filed presumption, we risk engaging in a stalemate with the Colorado court, each waiting for the other court to make a determination of the motion to dismiss or transfer before attending to the mirror motion before it. Because defendant CQG did not make a motion to stay, we feel compelled to decide this motion on the facts before us. In doing so, we accept jurisdiction and believe that the Colorado court should transfer the related case to Illinois for consolidation with this case.[2]

Additionally, as plaintiff noted, seven additional related patent infringement actions are currently pending in the Northern District of Illinois, two of which are before this court. We agree that there is an efficiency benefit of maintaining all of the cases in the same district. Finally, we note that this court has jurisdiction over all parties to this action.

Based on the facts of the case before us, weighing the convenience of the parties and respecting the purposes of the Declaratory Judgment Act, we find that this case is properly heard before this court. Thus, we deny defendants' motion to dismiss.[3]

---

[2] Unlike jurisdiction over coercive actions, a "district court is not required to exercise declaratory judgment jurisdiction, but has 'unique and substantial discretion' to decline that jurisdiction." Electronics for Imaging, Inc., 394 F.3d at 1345. See also EMC Corp., 89 F.3d at 813 ("Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction").

[3] Defendants spend a significant amount of time trying to convince this court that a case or controversy existed at the time of the filing of their declaratory judgment suit. Because we find that this district is the proper venue for determining the rights and obligations of the interested parties, it is unnecessary to determine whether there was a case or controversy upon filing of the declaratory judgment suit such that Colorado would have had jurisdiction.

In analyzing a motion to transfer venue, we assess whether transfer would serve the convenience of the parties and witnesses and would be in the interests of justice. *See* <u>Santa's Best Craft, LLC v. Janning</u>, 2003 WL 21504522, *3 (N.D. Ill. 2003). In making such an assessment we must consider the private interests of the parties and the public interests of the courts. <u>Georgouses v. NaTec Resources, Inc.</u>, 963 F.Supp. 728, 730 (N.D.Ill.1997). Specifically, we should look at plaintiff's choice of forum, access to proof, availability and convenience of witnesses, situs of material events, convenience, each forum's interest in resolving the controversy, familiarity with applicable law, and court resources and congestion. *Id.* The defendants, as the moving party, bear the burden of demonstrating that a transfer to the District of Colorado is clearly more convenient. <u>Clearclad Coatings, Inc. v. Xontal, Ltd.</u>, 1999 WL 652030, *8 (N.D. Ill. 1999). Based on the discussion above regarding the convenience of parties, access to proof, and possibility for consolidation, we do not believe that the defendants have met that burden. Therefore, we deny defendants' motion to transfer venue.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or transfer is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 31, 2005.