

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> eSpeed, Inc., eSpeed International, Ltd., <br> Ecco LLC, and Ecco Ware Ltd., <br> Defendants. | ) ) ) ) ) ) | No. 04 C 5312 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> Refco Group Ltd., LLC, et al., <br> Defendants. | ) ) ) ) ) | No. 05 C 1079 <br> Judge Andersen |
| Rosenthal Collins Group, LLC, <br> Plaintiff-Counterclaim Defendant, <br> vs. <br> Trading Technologies International, Inc., <br> Defendant-Counterclaimant, | ) ) ) ) ) ) | No. 05 C 4088 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> GL Consultants, Inc. and GL Trade SA, <br> Defendants. | ) ) ) ) ) ) | No. 05 C 4120 <br> Judge Gottschall |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> CQGT, LLC and CQG, Inc., <br> Defendants. | ) ) ) ) ) ) | No. 05 C 4811 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> FuturePath Trading, LLC, <br> Defendant. | ) ) ) ) ) ) | No. 05 C 5164 <br> Judge Shadur <br><br> All Cases Assigned to Judge <br> <u>Moran For Common Issues</u> |

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Trading Technologies International, Inc. ("TT") seeks to compel defendants' communications.[1] Specifically, as clarified in TT's reply brief, TT is seeking the following: (a)

---

[1] When we refer to defendants, we mean eSpeed, Inc., eSpeed International, Ltd., Ecco LLC, and EccoWare Ltd. (collectively "eSpeed"); GL Consultants, Inc. and GL Trade SA (collectively "GL"); CQGT, LLC and CQG, Inc. (collectively "CQG"); FuturePath Trading, LLC ("FuturePath"); and Rosenthal Collins Group, LLC ("RCG"). Although RCG is technically a plaintiff in its declaratory action against TT, for convenience purposes, we refer to RCG as a defendant for purposes of this order.

the identity of each member of the alleged joint defense group; (b) when the alleged joint defense group came into existence and when each member joined the group; (c) all communications between the defendants before they became members of the alleged joint defense group relating to TT's patents, the lawsuits, and alleged prior art; (d) all communications between members of the alleged joint defense group and third parties outside the group relating to TT's patents, the lawsuits, and alleged prior art; and (e) all alleged prior art in the possession of the defendants received from anyone (including members of the alleged joint defense group and third parties outside the group). Defendants claim that they have sufficiently set forth the metes and bounds of their joint defense privilege and plaintiff is not entitled to further discovery on privileged material.

The joint defense privilege is an extension of the attorney-client privilege designed to "facilitate communication among joint parties regarding matters that are important to protect their interests in litigation." Russell v. General Electric Co., 149 F.R.D. 578, 580 (N.D.Ill.1993) (citing U.S. v. McPartlin, 595 F.2d 132, 1336 (7th Cir.1979)). Because the privilege may sometimes exist outside the context of actual litigation, the joint defense privilege is also commonly referred to as a "common interest" rule. In re Grand Jury Subpoena, 274 F.3d 563, 572 (1st Cir.2001). *See also* United States v. Evans, 113 F.3d 1457, 1467 (7th Cir.1997). For a joint defense privilege to apply, those invoking the privilege must have a "manifested common interest in the litigation" (Ludwig v. Pilkington North America, Inc., 2004 WL 1898238, *3 (N.D.Ill.2004)), and not "merely a common business interest." For Your Ease Only, Inc. v. Calgon Carbon Corp., 2003 WL 21920244, *1 (N.D.Ill.2003). While a written agreement is not necessary, those invoking the privilege must "show an expressed intent to cooperate in the litigation." Ludwig, 2004 WL 1898238, at *3.

The joint defense privilege applies only to communications that would have been privileged absent the involvement of a third party. *See* For Your Ease Only, Inc., 2003 WL 21920244, *1. Thus, unless the communication would have been under the attorney-client or work product privilege, it will not be privileged simply because the defendants discussed it together. Intex Recreation Corp. v. Team Worldwide Corp., 471 F.Supp.2d 11, 16 (D.D.C.2007).

As we have previously noted with regard to a joint defense privilege in this case, it is clear that the defendants in TT's various cases have been participating in joint defense strategies. Such cooperation is anticipated, and in fact it would be poor and perhaps actionable legal conduct to fail to participate in such joint defense strategies. We find, therefore, that defendants have expressed an intent to cooperate in this litigation and may invoke the joint defense privilege. Thus, where communications were made in the course of a joint defense effort, statements were made in furtherance of that effort, and the privilege was not waived, the defendants may decline to produce such communication based on privilege. *See* Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C., 2002 WL 649043, *5 (N.D.Ill.2002).[2]

Plaintiff first seeks the identity of all participants in the joint defense group. We have previously noted that should the joint defense agreement be memorialized in writing, defendants should produce a copy of the agreement to plaintiff. If the agreement was made orally or informally, defendants need only produce to defendant a list of the participating

---

[2] With respect to GL's production of three pages of notes titled "eSpeed Atty Mtg" (TT's brief, exh. E), even if such communication was privileged (GL asserts that it is not), unintentional production of privileged materials will not lead to a broad waiver of privilege. Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc., 2006 WL 3524016, *11 (N.D.Ill.2006).

members.[3]

Defendants also seek to identify when the joint defense agreement came into existence and when each member joined the group. GL has indicated that "[e]ach defendant entered the JDA with the other defendants as of the date of their particular suit with TT began" (GL's response at 3). Such timing is not surprising, considering TT's visible and calculated effort to enforce its patent rights against competitors throughout the futures industry. GL's submission should be sufficient to satisfy plaintiff's request as to the entry of each defendant into the joint defense agreement. Further, even if any of the defendants participated in an informal joint defense agreement, such communication may still be protected by the joint defense privilege. The privilege applies to both parties and potential parties to an action. Russell, 149 F.R.D. at 580; Ocean Atlantic Development Corp., 2002 WL 649043, at *6. Therefore, at this time we decline to require defendants to submit communication between the parties during the pendency of or prior to their respective lawsuits.

We turn now to TT's request that defendants produce all communications between defendants and third parties relating to TT's patents, the lawsuits, and alleged prior art. Because, TT argues, communications with third parties are not privileged, TT asserts that defendants' communications with such third parties as the Futures Industry Association, the Futures and Options Association, and the Chicago Mercantile Exchange must be produced. We find that such an assertion depends on the kind of communication at issue. Privilege based

---

[3] It is clear that all defendants are participants in the joint defense agreement and therefore may claim a privilege for protected communications between themselves and their counsel. There is some confusion, however, as to whether third parties have been involved in allegedly privileged conversations under the joint defense agreement. We note below that communication with third parties may sometimes remain privileged under the work product doctrine even if the third parties are not members of the joint defense group. Plaintiff is not then entitled to learn the identity of such third parties. Where, however, defendants are asserting a joint defense privilege with third parties, protecting communications under the attorney-client privilege, plaintiff is entitled to know the identity of those parties.

on work product – documents and communications prepared in anticipation of litigation (Bowman v. Brush Wellman, Inc., 2001 WL 1098056, *2 (N.D.Ill.2001)) – is more difficult to waive than attorney-client privilege. The purpose behind attorney-client privilege is to encourage full disclosure, and therefore, disclosure to a third party that eliminates the confidentiality is a reason to find waiver of the privilege. BASF Aktiengelesellschaft v. Reilly Industries, Inc., 224 F.R.D. 438, 442-43 (S.D.Ind.2004). In contrast, because the purpose of the work product doctrine is to protect a party's litigation strategies from disclosure to the opposing party, "only those disclosures that substantially increase the potential for an adversary to obtain the disclosed information implicates a waiver of the work product protection." *Id.*, at 443. *See also* Bowman, 2001 WL 1098056, at *3. Thus, while attorney-client privilege would be waived by communication of any privileged material to third parties outside of the joint defense agreement, such is not the case for work product privilege. Where defendants corresponded with third parties in preparation for litigation, such communications are privileged under the work product doctrine, whether or not the third parties were members of the joint defense group.[4] We have previously indicated to the parties involved in this case that we must rely on the integrity of counsel to determine what is and is not privileged. Therefore, we hold defendants responsible for producing any communication not protected by a legitimate privilege as articulated in this opinion. Otherwise, we decline to require defendants to produce all communications between members of the alleged joint defense group and third parties outside the group relating to TT's patents, the lawsuits, and

---

[4] As the entire futures trading industry has an interest in the outcome of this litigation, particularly in light of TT's open letter to the futures industry and its proposed 2.5 cent solution, and plaintiff is so aggressively fighting for disclosure of the communications, we find it unlikely that any disputed communication has a substantial potential for reaching TT's hands without a court order, and thus do not find the work product privilege waived.

alleged prior art.

Finally, we turn to plaintiff's final request, production of all alleged prior art in the possession of the defendants received from anyone (including members of the alleged joint defense group and third parties outside the group). To the extent that communications regarding prior art are protected by the work product or attorney-client privilege, such communication need not be produced. To the extent that defendants are in possession of any factual information regarding prior art, such information must be produced.

## CONCLUSION

For the reasons stated herein, we deny plaintiff's motion to compel defendants' privileged communications, as privilege is defined in this order.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 1, 2007.