# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 05-cv-4811 |
| CQG, INC., and CQGT, LLC, | ) ) ) |
| Defendants. | ) Judge Sharon Johnson Coleman ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Trading Technologies International, Inc., ("TT") moves to terminate the *Markman* claim construction proceedings [502], arguing that all outcome determinative claims were construed as part of the *eSpeed* litigation. Defendants CQG, Inc. and CQGT, LLC, (collectively "CQG") oppose termination of the *Markman* proceedings and request this Court construe or refine the construction of the terms: "static," "common static price axis," "static display of prices," "manual re-centering command," manual re-centering," "manual re-centering position," "in response to…sending," "[] to… send," and "as a result of…to…send." For the reasons stated below, this Court grants TT's motion to terminate the *Markman* proceedings.

**Background**

As in the related *eSpeed* case, TT brings this civil suit against CQG for patent infringement. TT is the owner by assignment of U.S. Patent No. 6,772,132 ("'132 patent") and U.S. Patent No. 6,766,304 ("'304 patent"). The United States Patent and Trademark Office issued the '132 patent on August 3, 2004 and issued the '304 patent on July 20, 2004. The patents claim software for displaying the market for commodity trading in an electronic exchange. Judge Moran, of the United

States District Court for the Northern District of Illinois, was the presiding judge of the *eSpeed* case and the *Markman* proceedings.

The present case was reassigned to Judge Moran for coordinating common issues, including *Markman* proceedings, with *eSpeed* and other related cases in 2005. In an effort to efficiently manage the similar cases of *eSpeed*, this case, and other related cases, Judge Moran conducted *Markman* proceedings to construct the meaning of certain terms, which are at issue in this case and others. As part of the coordination effort in 2005, Judge Moran permitted CQG to participate in the *Markman* proceedings of the *eSpeed* case. CQG fully participated in those *Markman* proceedings. CQG submitted briefs, an expert report, and presented attorney argument and expert testimony. CQG's involvement addressed the following terms in the 2005 Markman proceedings: "static display of prices," "static price axis," "order entry region, " and "single action of a user input device." Judge Moran acknowledged CQG's involvement in the *eSpeed* case *Markman* proceedings and further stated, "Accordingly, CQG elects to file this Response, but reserves the right to amend or supplement…if there are terms that are not construed in this [*eSpeed*] proceeding that require construction at a later time."

Judge Moran issued his claim construction ruling on October 31, 2006. The *eSpeed* court later clarified the claim construction in a supplement on February 21, 2007, and discussed the construction again in a June 2007 ruling. The Federal Circuit Court in *eSpeed* then affirmed Judge Moran's constructions and infringement rulings. The *eSpeed* court constructed the following terms: "static display of prices," "common static price axis," "static," order entry region," "when the [inside] market changes," "single action," and fifteen other terms.

In April of 2007, CQG filed a motion for summary judgment of non-infringement, relying on Judge Moran's construction of terms, claiming the accused CQG products did not meet the "static" limitation terms. In July 2008, Judge Moran stayed this case pending the *eSpeed* appeal and

2

declined to rule on the CQG's summary judgment motion because TT had not yet taken discovery about CQG's accused products. In 2010, the Federal Circuit affirmed Judge Moran's claim construction of the "static" terms.

It is worth noting that, prior to the *eSpeed* appeal decision, CQG appeared before this Court wanting to proceed with the summary judgment motion based on the "static" terms. This Court stayed the summary judgment motion while the parties attempted to settle. When the settlement talks broke down, both parties filed a joint status report outlying their positions. In the joint status report, TT stated that no *Markman* proceedings were needed because Judge Moran had already the terms in the *eSpeed* case. Conversely, CQG disagreed. CQG suggested this Court should follow local rules and move forward with the *Markman* proceedings in this case. Further, CQG stated: CQG recognizes that the case may rise or fall based on Judge Moran's and the Federal Circuit's construction of certain claim terms from the *eSpeed* case. CQG asserted that there is no justifiable reason to preclude the parties from addressing claim construction issues in this case, especially for claim terms that have not yet been construed by the Federal Circuit. This Court set a schedule with *Markman* briefing but did not rule on whether a *Markman* hearing would be held.

**Legal Standard**

Determining a patent infringement is a two-step process. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384 (1996); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1371 (Fed. Cir. 2004). The first step requires the court to determine the scope and meaning of the asserted claim. *AFG Indus., Inc.*, 375 F.3d at 1371. Then, the court compares the properly construed claims with the accused device to reach a verdict regarding the infringement. *Id.* TT's motion to terminate the *Markman* proceedings relates to the first step – determining the scope and meaning of the asserted claim.

Claim construction is a question of law. *Markman,* 517 U.S. at 384; *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.,* 515 F.3d 1331, 1336 (Fed. Cir. 2008). A term is construed according to its ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009). The court construes the claim using the letters-patent, the description of the invention and specifications of the claim annexed to them. *Markman*, 517 U.S. at 384. Furthermore, judges are better versed and equipped than juries to construe written instruments and are thus charged with claim construction. *Id.*

The United States Supreme Court stressed that treating interpretive issues, such as claim construction, as purely legal will promote certainty and uniformity through the application of *stare decisis* and issue preclusion. *Markman,* 517 U.S. at 390. Construction of the claim becomes the law of the case, barring retrial of issues that were previously resolved. *AFG Indus., Inc.*, 375 F.3d at 1372. Courts are not free to second-guess the Federal Circuit's prior decisions on issues of law, such as claim construction, unless there is an exception. *AFG Indus., Inc.*, 375 F.3d at 1372. Some recognized exceptions include: the discovery of new and different material evidence that was not presented in a prior action; an intervening change in controlling legal authority; or when a prior decision is clearly wrong and its preservation would manifest an injustice. *Id.*

The issue of *stare decisis* becomes difficult when a plaintiff secures a claim construction of a term against one defendant and that construction becomes binding as to all future defendants regardless of the initial scope arguments raised. *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 2011 WL 11070303 *1- *2 (E.D. Tex. 2011). "However the principal of *stare decisis* would lose all meaning if a later defendant could unbind itself by merely framing the issue differently." *Id.* The Federal Circuit's decision is binding as a matter of law and a district court must apply the Federal Circuit's claim construction even where a non-party to initial litigation would like to present new arguments.

*Id.* (quoting *Rambus Inc. v. Hynix Semiconductor, Inc.*, 569 F.Supp.2d 946, 963–64 (N.D. Cal. 2008), which the Federal Circuit later affirmed in *Hynix Semiconductor, Inc.* v. *Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011)).

**Discussion**

TT argues that all terms proposed by CQG were already construed by Judge Moran in proceedings where CQG was an active participant and CQG is improperly seeking to alter those constructions. Further, CQG agreed that it would be bound by constructions of terms addressed in those proceedings. TT also argues that several of the constructions CQG seeks to revisit were affirmed by the Federal Circuit on appeal in *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, (Fed. Cir. 2010). CQG responds that one group of terms, the "static limitation" terms, needs clarification, and two groups of terms, the "manual recentering" terms and the "in response to… sending" terms, were never presented to Judge Moran.

*I. "Static Limitation" Terms*

TT argues that the "static" terms were construed by Judge Moran and affirmed by the Federal Circuit and thus this Court should not refine them as CQG requests because the construction is law of the case and we are bound by *stare decisis*. CQG on the other hand, asserts that this Court should adopt the Federal Circuit's construction of the "static limitation" terms and refine it to address new disputes. Specifically, CQG asks this Court to adopt the "permanency" requirement included by the Federal Circuit, and determine whether all or some prices in a price column must exhibit the static condition. CQG's position is that the scope of TT's patent rights requires that <u>all</u> prices in the price column must be static. TT takes the opposition position, that only <u>some</u> prices in the price column must be static.

The "static limitation" terms are "common static price axis" and "static display of prices." Judge Moran construed "common static price axis" as "a line comprising price levels that do not

5

change positions unless a manual re-centering command is received and where the line of prices corresponds to at least one bid value and one ask value." (Dkt. 105 at 6). Judge Moran construed "static display of prices" as "a display of prices comprising price levels that do not change positions unless a manual re-centering command is received." *Id.* Judge Moran further explained, stating "we must construe the term 'static' in its ordinary meaning, non-moving, and allow for the only exception plainly stated in the written description: manual re-centering." *Id.* at 8. The Federal Circuit affirmed the district court's construction of the "static" terms and construed the claims to "require a manual re-centering command." *eSpeed*, 595 F.3d at 1354.

The instant case is similar to *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.,* where the Federal Circuit affirmed a district court's claim construction of a term that was secured by the plaintiff against one defendant and later used in another case against another defendant. *Miken* 515 F.3d at 1333. In *Miken*, the Court revisited for a third time the claim construction of the term "insert" relating to the manufacturing of a sports bat. *Id.* In the first case, *Wilson Sporting Goods Co. v. Hillerich & Bradsby, Inc.*, 442 F.3d 1322 (Fed. Cir. 2006), Wilson obtained construction of the term in question against one defendant. *Id.* A second case brought by a different plaintiff against a different defendant also looked at the same term "insert" of the *Hillerich* case, and that court also accepted the *Wilson v. Hillerich* construction of the term. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314 (Fed. Cir. 2001). The third time the court visited the term "insert" was in *Miken*. In *Miken*, the court affirmed the claim construction of the term "insert" consistent with the *Hillerich* and *DeMarini* cases. *Miken* 515 F.3d at 1338 n*. Further the *Miken* court, in a footnote, stated that to not follow the prior courts construction of the term would "run counter to the Supreme Court's guidance on *stare decisis* in *Markman*." *Id.*

Here, the Federal Circuit affirmed the district court's construction of the term "static," including "common static price axis" and "static display of prices." *eSpeed*, 595 F.3d at 1355.

6

Additionally, CQG, while not a defendant in *eSpeed*, fully participated in the *Markman* proceedings constructing the "static" terms. Further, CQG, at various times in this case, has acknowledged the Federal Circuit's binding authority when it constructed the "static" terms. Moreover, Judge Moran instructed CQG that it could amend or supplement terms that were not construed in the *eSpeed* case; "static" was constructed in *eSpeed*. Unless there is new or different material evidence, a change in authority, or if the prior decision was clearly incorrect, the Federal Circuit's decision is the law of the case. *AFG Indus., Inc.*, 375 F.3d at 1372. CQG's assertion that the "static" terms need clarification is unpersuasive at this time. The issue of whether a particular product infringes based on its functionality will be considered at the summary judgment phase. Ultimately, this Court is barred by the law of the case and *stare decisis* from construing, refining, or re-litigating the "static" terms.

### III. "Manual Re-centering" Terms

The "manual re-centering" terms appear in Judge Moran's construction of the "static" terms, rather than in the patent claims. Construing the patent and giving proper meaning to the claim language is the first step in a patent case. *E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1220 (Fed. Cir. 2007); *Markman,* 517 U.S. at 384 (1996). However, when giving proper meaning to the claim language, "the terms courts use to enunciate the proper construction of a claim are not themselves limitations that require interpretation." *E-Pass Technologies, Inc.*, 473 F.3d at 1220. In *E-Pass*, E-Pass correctly argued that the district court, during its infringement analysis, improperly treated words of the claim construction as additional claim limitations. *Id.* The *E-Pass* court ultimately ruled that the error was harmless and had not departed from the claim construction of the term. *Id.* While the *E-Pass* court held it was a "harmless error," that would not be the case here.

In our case, like in *E-Pass*, CQG asks this Court to construe language that the *eSpeed* court used to construe the term "static." When construing "static display of prices," the *eSpeed* court stated: a display of prices [line] comprising price levels displayed along a line that do not change

7

positions unless a manual re-centering command is received…."; And "A price level that only moves in response to a manual re-centering command cannot also move in response to an automatic re-centering command. Thus, this court construes the claims to require a manual re-centering command." *eSpeed*, 595 F.3d at 1352. CQG alleges the additional language the court used to construct "static" is outcome determinative and thus should be constructed by this Court. However, as noted in *E-Pass*, words that the courts use to construct terms are not in and of themselves terms to be constructed. *E-Pass Technologies, Inc.*, 473 F.3d at 1220. The *Miken* court further stated: "a claim term should not be broadened in the absence of something in the written description and/or prosecution history to provide explicit or implicit notice to those of ordinary skill in the art, that the *inventor* intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record." *Miken*, 515 F.3d at 1338. Construing the terms Judge Moran used in the construction of the "static" term would change the meaning and limitations given to that term. This Court will apply the "static" term as construed in the *eSpeed* litigation.

## VI. "Single Action" / "in response to…sending" Terms

As noted in the previous sections, this Court is not free to second-guess the Federal Circuit's prior decisions on issues of law, such as claim construction, unless there is an exception. *AFG Indus., Inc.*, 375 F.3d at 1372. Additionally, "the terms courts use to enunciate the proper construction of a claim are not themselves limitations that require interpretation." *E-Pass Technologies, Inc.*, 473 F.3d at 1220.

The *eSpeed* court has already construed the claim term "single action of a user input device." *eSpeed*, 595 F.3d 1358-59. In its *eSpeed* construction of "single action of a user input device," the court stated: "In response to a selection of a particular location of the order entry region by a single action of the user input device, setting a plurality of parameters for a trade order relating to the

8

commodity and sending the trade order to the electronic exchange." ('304 patent claim 1). Similar to the "manual re-centering" terms above, the terms that CQG is looking to construe are not part of the claim, but are part of the construction that the *eSpeed* court used to "enunciate the proper construction of a claim." Construing these additional terms would change the meaning and place limitations on the "single action user" claim term. Therefore, this Court declines to construe the construction.

**Conclusion**

For the reasons stated above, this Court grants TT's motion to terminate *Markman* proceedings [502].

IT IS SO ORDERED.

Date: April 24, 2014

Entered: _____
United States District Judge

9