UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05-cv-4811 |
| CQG, INC., and CQGT, LLC, | ) ) | |
| Defendants. | ) ) ) | Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

CQG, Inc. and CQGT, LLC (collectively "CQG"), moves to strike portions of Trading Technologies, International, Inc.'s ("TT") infringement reports and to preclude TT's reliance on theories, evidence, testimony, and analyses related to those portions [594]. CQG argues that TT's expert reports from Dr. Craig Pirrong and Mr. Christopher Thomas seek to introduce new theories and analyses not found in TT's Final Infringement Contentions. TT responds that some of the information that CQG seeks to have stricken was expressly disclosed in the Final Infringement Contentions, some of it merely supports one of the disclosed infringement contentions, and that CQG is demanding more specificity in the Final Infringement Contentions than is required. For the reasons stated herein, the Court grants in part and denies in part the motion.

**Background**

Trading Technologies tendered its Amended Final Infringement Contentions with Respect to CQG's Products pursuant to Local Patent Rules 2.2 and 3.1 with Exhibits on November 26, 2013. TT contends that three of CQG's electronic trading products include a component, the DOMTrader Window, that is covered by certain claims of U.S. Patent No. 6,766,304 ("the '304

patent") and U.S. Patent No. 6,772,132 ("the'132 patent") (collectively "the patents-in-suit"). The DOMTrader is present in CQG's trading products known as CQG Integrated Client (CQGIC), CQG Trader (CQGT), CQG WebTrader (WT), and is also present in certain products, which CQG allowed to be rebranded by other companies. Versions of the accused products containing the DOMTrader can be operated in at least one mode that includes a "common static price axis"/ "static display of prices" as construed, or an equivalent in addition to other elements of each claim. Certain versions of the CQGIC product include a component called the ChartTrader window, which TT also claims infringes literally or under the doctrine of equivalents.

**Legal Standard**

As the Federal Circuit Court of Appeals observed, "local patent rules are meant to prevent a 'shifting sands' approach to claim construction by forcing the parties to 'crystallize their theories of the case early in litigation.'" *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1364 (Fed. Cir. 2006); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 08 C 3379 & 09 C 4530, 2012 U.S. Dist. LEXIS 101008, *34 (N.D. Ill. July 19, 2012) (Holderman, J.). Local Patent Rule 2.2 provides the parameters for infringement contentions, stating:

> A party claiming patent infringement must serve on all parties "Initial Infringement Contentions" containing the following information:
>
> (a) identification each claim of each patent in suit that is allegedly infringed by the opposing party, including for each claim the applicable statutory subsection of 35 U.S.C. § 271;
>
> (b) separately for each asserted claim, identification of each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of the opposing party of which the party claiming infringement is aware. Each Accused Instrumentality must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) a chart *identifying specifically where each element of each asserted claim is found within each Accused Instrumentality*, including for each element that such party contends is governed by 35 U.S.C. § 112(6), a description of the claimed function of that element and the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(d) identification of whether each element of each asserted claim is claimed to be present in the Accused Instrumentality literally or under the doctrine of equivalents. For any claim *under the doctrine of equivalents, the Initial Infringement Contentions must include an explanation of each function, way, and result that is equivalent and why any differences are not substantial*;

(e) for each claim that is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. If alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described;

(f) for any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled;

(g) identification of the basis for any allegation of willful infringement; and

(h) if a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own or its licensee's apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted patent, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim, including whether it is marked with the patent number. *N.D. Ill. L.P.R.* 2.2 (emphasis added).

"Infringement contentions are generally considered adequate if they provide fair notice of the scope of the plaintiff's infringement theory. In other words, infringement contentions must set forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves. Expert infringement reports may not introduce theories not previously set forth in infringement contentions." *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 08 C 3379 & 09 C 4530, 2012 U.S. Dist. LEXIS 101766, *25 (N.D. Ill. July 23, 2012) (Holderman, J.) (citations omitted). CQG's motion raises issues with five main portions of TT's infringement expert reports. The Court will address each in turn.

1. *Manual Re-centering Commands*

CQG first argues that both patents-in-suit contain a "Static Limitation" that was construed by this Court and affirmed by the Federal Circuit to require a "manual re-centering command," but despite this construction, TT's Final Infringement Contentions fail to include a chart identifying

specifically where each element of each asserted claim is found within each Accused Instrumentality. Nevertheless, both of TT's experts included alternative theories of infringement based on the existence of a manual re-centering command for each of the independent claims.

Although TT maintains that manual re-centering is not a required element of the independent claims, both the Federal Circuit and this Court disagreed. TT lists in its supplemental infringement contentions commands/events in certain accused products that are "manual" per the construction of "static" for the dependent claims and supplemented the claim charts for its dependent claims. However, TT fails to identify a manual re-centering command for each of the <u>independent</u> claims. TT now asserts that the re-centering/centering instructions in certain dependent claims are identical in scope to the independent claims' manual re-centering command. Therefore, TT has not complied with L.P.R. 2.2 (c) and its experts may not present opinions regarding the presence of manual re-centering commands for each of the independent claims.

   2. *Modifying .ini Files as a Basis for Literal Infringement*

Next, CQG argues that TT's expert reports exceed the scope of infringement contentions because they assert a separate basis for satisfying the Static Limitation by modifying the source code in the .ini file in CQG's DOMTrader to disable the Market Window (or Market Pane). CQG asserts that TT's claim charts for this range of products refers only to Section B(3)(b) and Fig. 2C of TT's Final Infringement Contentions, and neither that section nor that figure include any reference to modifying the .ini files. TT responds that its Contentions expressly set forth that infringement is based in part on a user's ability to disable the functionality of the Market Window in some versions of CQG's products (Ex. 1, Section B(3), p. 17-19; Section B(3)(a), p. 17-18) ("[T]he Market Window may also be manually disabled via changing the .ini file setting…"). This Court finds that TT did refer to modifying the .ini files, though it used the term "changing" rather than modifying the file

setting. Nevertheless, TT was clearly referring to changing the .ini file setting as an alternate means of disabling the market window. CQG's motion is denied on that basis.

3. *Infringement Based on Copying and the Correctness or Reasonableness of CQG's Opinions of Counsel*

CQG contends that TT failed to claim infringement or willful infringement in TT's Final Infringement Contentions based on CQG having copied various features and functionalities in TT's products, but both TT's experts claim to have reviewed documents produced by CQG that demonstrate copying by CQG. Similarly, CQG contends that TT's experts claim to have reviewed CQG's opinions of counsel regarding non-infringement, but TT failed to include in its Final Infringement Contentions a theory of infringement or willful infringement based on the correctness or reasonableness of its opinions of counsel.

CQG's motion is granted as to copying. Nowhere in TT's infringement contentions does there appear to be an infringement theory based on copying. With respect to opinions of counsel, that theory is sufficiently set forth in the Final Infringement Contentions that TT's experts may provide opinions on the inaccuracy of the description of the accused products in the opinion letters, but not that CQG willfully infringed through its counsel's non-infringement opinions.

4. *Doctrine of Equivalents Infringement Based on Disablement, Specific Modes Within Price Hold, and Specific Modes within ChartTrader*

CQG requests that this Court strike portions of TT's expert reports regarding certain aspects of the claims of infringement under a Doctrine of Equivalents theory. This argument contains three sub-parts:

First, that TT's Final Infringement Contentions do not include a Doctrine of Equivalents theory of infringement based on disabling the Market Window. TT contends that its experts' opinions that CQG's products literally infringe TT's patents based in part on a user's ability to disable the Market Window, noting that the presence of three Shift Types identified by CQG (L, M,

and K) do not prevent literal infringement and even if it did prevent literal infringement, the products still infringe under the Doctrine of Equivalents. (TT citing Ex. 2 at ¶ 192; Ex. 3 at ¶ 111, 126.) TT contends that this same theory of infringement is set forth in the contentions in Sections B(3)(b), B(2)(a), and B(2)(b), in conjunction with its literal infringement theory. However, TT has not provided the requisite explanation of each function, way, and result that is equivalent and why any differences are not substantial and therefore TT has not provided a Doctrine of Equivalents theory based on disabling the Market Window. The sections of its Contentions to which TT refers describe only a theory of literal infringement. Rule 2.2 clearly requires more than the passing reference to infringement under the Doctrine of Equivalents. Therefore, this Court grants CQG's motion as to Doctrine of Equivalents theory based on disabling the Market Window.

Second, that TT's Final Infringement Contentions do not specify which state of the DOM Grid must be used together with the Price Hold feature under its Doctrine of Equivalents infringement theory. TT asserts that its expert reports provided a narrower Doctrine of Equivalents theory based on the Price Hold Feature than was set forth in its Final Infringement Contentions, which state only that the DOMTrader must be operated in the Responsive Scale Mode, without reference to the sub-modes (i.e. the Market or Browse Modes). The narrower theory described in the expert reports necessarily refers to the sub-modes. CQG replies that its DOMTrader software is capable of being operated in at least three transient states: the market state, the browse prices state, and the browse orders state.[1] The Court does not believe that this represents a new theory of infringement, but is a refinement of the theory presented, *i.e.* that the DOMTrader together with the Price Hold Feature infringes the patents-in-suit under the Doctrine of Equivalents when operated in the Responsive Scale Mode. Whether it infringes when operated only in certain ones of the three

---

[1] TT refers to these "transient states" as "sub-modes".

sub-modes when it is operated in the Responsive Scale Mode does not render it a new theory. Therefore, the motion is denied as to this argument.

Third, that TT's Final Infringement Contentions do not specify how ChartTrader must be used together with the Price Hold feature under its Doctrine of Equivalents infringement theory. TT contends that it includes both the DOMTrader and the ChartTrader in the heading and subheading as having the infringing Price Hold feature, and the function/way/result analysis contained in Section D(2) of the Final Infringement Contentions does not specify the DOMTrader, but instead refers to "the accused products having Price Hold." Section D(3) and the claim charts also refer to ChartTrader. This Court finds TT's passing references to ChartTrader do not sufficiently present a Doctrine of Equivalents theory, particularly where there is no function/way/result analysis that specifically refers to ChartTrader and nothing indicating that the analysis for both DOMTrader and ChartTrader would be identical. Accordingly, the Court grants CQG's motion as to this argument.

5. *Product Behavior and Trader Usage*

CQG argues that the expert reports' analysis of product behavior and trader usage exceeds the scope of TT's Final Infringement Contentions. Specifically, CQG makes the following assertions:

(1) TT's Final Infringement Contentions do not include any analysis regarding the presence of the Automatic Shift Types as part of its Doctrine of Equivalents infringement theory. This Court agrees, though TT's Contentions describe CQG's products and state why the function, way, and result are equivalent, they do so without reference to the Automatic Shift Types as part of a Doctrine of Equivalents theory. Therefore, the motion is granted on this issue.

(2) TT's Final Infringement Contentions do not provide any analysis on exchange or product behavior together with Automatic Shift Type K as part of its infringement theory. TT's

Contentions do discuss Shift Type K and product behavior and that it does not prevent a finding of infringement. Therefore, the Court denies the motion on this issue.

(3) TT's Final Infringement Contentions do not provide any evidence of actual usage of the accused products. TT asserts that the Local Patent Rules do not require it to point to "specific, actual use of the product" for method claims. Nor do the rules require the "reasonably capable" analysis that CQG contends TT must demonstrate in its Final Infringement Contentions. This Court agrees that the Local Patent Rules do not require the Final Infringement Contentions to provide evidence of actual usage of the accused products and therefore the motion is denied on this point.

(4) TT's expert reports exceed the scope of TT's Final Infringement Contentions on Product Functionality in three instances: the assertion that CQG's products maintain layout and settings between sessions, the analysis of Automatic Shift Type Q and comparison of it to other Automatic Shift Types as part of infringement theories, and the assertion of infringement based on the Spreader configuration of the DOMTrader. The Court grants the motion with respect to the analysis of Automatic Shift Type Q and the assertion of infringement based on the Spreader configuration of the DOMTrader, and denies the motion as to the expert reports exceeding the scope of the Contentions on the assertion that CQG's products maintain layout and settings between sessions.

**Conclusion**

As set forth above, CQG's Motion to Strike Portions of TT's Infringement Reports and to Preclude TT's Reliance on Theories, Evidence, Testimony, and Analysis Related to those Portions [594] is granted in part and denied in part.

IT IS SO ORDERED.

Date: September 10, 2014

Entered: _____

United States District Judge