UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 05-cv-4811 |
| CQG, INC., and CQGT, LLC, | ) ) ) | |
| Defendants. | ) ) | Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

On December 12, 2014, CQG filed a Motion to Stay the case pending Covered Business Method Review by the U.S. Patent and Trademark Office [845]. The Court allowed Trading Technologies until December 29, 2014, to respond. No reply was allowed, but one was filed.[1] For the reasons stated below, the motion is denied.

**Background**

The instant motion stems from a petition filed by TD Ameritrade Holding Corp. et al. on May 19, 2014, with the USPTO requesting review under the transitional program for covered business method patents of U.S. Patent No. 6,772,132 B1 (one of the patents-in-suit in our case – the '132 patent).[2] TD Ameritrade challenged the patentability of claims 1-56 of the '132 patent under 35 U.S.C. § 101 (among other things). On December 4, 2014, the USPTO determined that the petition demonstrates that it is more likely than not that the challenged claims are unpatentable under 35 U.S.C. § 101, and therefore instituted a covered business method patent review of claims

---
[1] The Court subsequently granted TT's Motion to Strike the Reply [872].
[2] Notably, TD Ameritrade is a defendant in a lawsuit filed by TT currently pending before Judge Virginia Kendall, 10 C 715. In that case, TD Ameritrade filed the motion to stay on May 22, 2014. Judge Kendall has not yet ruled on that motion. It is not uncommon for courts to wait to rule on a motion to stay until after the USPTO has issued its decision whether to grant review. TT filed its response in opposition to the stay in that case on December 16, 2014.

1

1-56 of the '132 patent. (Dkt. 845-6, Ex. 5). CQG represented in their motion its *intention* to file a petition with the USPTO challenging the patentability of the '304 patent (the other patent-in-suit in this case) under 35 U.S.C. § 101. CQG filed a petition with the USPTO for a covered business method patent review for each of the patents-in-suit on January 9, 2015, after this motion was briefed and taken under advisement by the Court.

**Legal Standard**

The America Invents Act ("AIA") was signed into law on September 16, 2011, and the transitional program for covered business method patents came into effect one year later in September 2012. "The AIA permits covered business method review only for 'covered business method patents,' which it defines as 'patent[s] that claim[ ] a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." *Market-Alerts Pty. Ltd. v. Bloomberg Finance LP et al.,* 922 F.Supp.2d 486, 491 (D. Del. Feb. 3, 2013)(citing America Invents Act (AIA), Pub. L. No. 112-29, § 18(d)(1), 125 Stat. 331 (2011)). The covered business review process lasts no more than 18 months, issuing a final written decision within twelve months of its beginning its review. *See* 77 Fed. Reg. 48757 (2012).

The AIA identifies four factors that a district court should consider when deciding whether to grant a stay: (1) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court. *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F. 3d 1368, 2014 U.S. App. LEXIS 21962, *4 (Fed. Cir. Nov. 20, 2014)(citing § 18(b)(1) of the AIA).

**Discussion**

CQG moves for a stay of the case in its entirety, arguing that section 101 subject matter patentability is a threshold question that should be resolved before the court considers subordinate issues such as infringement and validity. CQG refers to Judge Mayer concurring opinion in *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 2014 U.S. App. LEXIS 21633, *20 (Fed. Cir. Nov. 14, 2014), for the proposition that this Court must stay the litigation to allow the USPTO to determine patentability in the first instance. In his concurrence, Judge Mayer likens section 101 determination to a jurisdictional inquiry, stating "if claimed subject matter does not fall within the ambit of *section 101*, any determination on validity or infringement constitutes an impermissible advisory opinion." *Id.* Judge Mayer goes on to recite with approval some of the benefits of addressing section 101 at the outset of litigation.

*I. Four Factors for a Stay*

With respect to the four factors, CQG first argues that the USPTO review may eliminate the '132 patent entirely from this case. CQG also asserts that extensive and costly expert discovery remains to be completed as well as ruling on the three motions for summary judgment and pretrial preparation. Further, CQG argues that a stay will neither prejudice TT nor give CQG an unfair advantage. Lastly, CQG maintains that staying the case will reduce the burden on the Court and the parties. This Court weighs each factor in turn.

*1. Simplify the Issues and Streamline the Trial*

"[T]his simplification factor weighs more strongly in favor of a stay when all of the litigation claims are undergoing CBM review." *Versata Software, Inc.,* 2014 U.S. App. LEXIS 21962, at *7. Here, only one of the patents-in-suit is subject to covered business method review. Although review of the '132 patent could decide the issue of § 101 validity, there are other issues relating to the '132 patent

3

that the Court would still have to resolve. Moreover, the '304 patent is not implicated in any covered business method review and thus this Court would have to resolve all issues relating to that patent. In *Virtualagility, Inc. v. Salesforce.com, Inc. et al.,* 759 F.3d 1307, 1314 (Fed. Cir. 2014), cited by CQG, the court found it significant that CBM review included all asserted claims on the sole asserted patent and therefore review could dispose of the entire litigation. CQG only recently filed a petition with the USPTO for review of the '304 patent. This factor therefore weighs against a stay.

*2. Stage of Litigation*

CQG asserts that there is extensive and costly expert discovery remaining as well as pending motions for summary judgment and pretrial preparation. "Staying a case at an early juncture 'can be said to advance judicial efficiency and maximize the likelihood that neither the [c]ourt nor the parties expend their assets addressing invalid claims'… On the other hand, when confronted with a motion to stay in the later stages of a case, 'the [c]ourt and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Market-Alerts Pty. Ltd.,* 922 F.Supp.2d at 494.

Here, the case is set for trial in fewer than 60 days (73 days from filing of the motion to stay), pretrial dates are set, claim construction is complete, and all that remains of discovery is a rebuttal expert and the deposition of CQG's astrologer Mr. Hwang. Since CQG filed this motion, this Court has issued its ruling on one of the pending motions for summary judgment, issued an order on the second motion for summary judgment, and is in the process of finalizing its opinion memorandum and order on the last remaining motion for summary judgment.[3] While this Court acknowledges that there remains significant work to be done on this case, the bulk of discovery,

---

[3] The Court entered an order stating that it would treat CQG's motion for summary judgment on willfulness as a motion for directed verdict given the short time remaining before trial and the need for TT to depose Mr. Hwang before it is able to respond to the motion. The Court expects to issue its ruling on CQG's motion for summary judgment on the lack of written description within 10 days.

4

dispositive motions, *Daubert* motions, and claim construction is complete and what always remains is what always remains 60 days from trial – the final pretrial order, motions *in limine*, and any depositions that the parties have not had an opportunity to conduct. This factor weighs strongly against a stay.

*3. Undue Prejudice vs. Tactical Advantage*

CQG asserts that a stay would neither prejudice TT nor provide a tactical advantage to CQG. Courts consider a variety of factors to determine prejudice, including the timing of the stay request, the status of review proceedings, and the relationship between the parties. *See See Market-Alerts Pty. Ltd.,* 922 F.Supp.2d at 494. Indeed, the potential for delay does not, by itself, establish undue prejudice. Here, the case is nearly ten years old and thus further delay would not suggest undue prejudice. However, evidence of dilatory motive could point against a stay. *See Virtualagility, Inc.*, 759 F.3d at 1319. In *Virtualagility, Inc.*, the court noted that defendant Salesforce.com filed a covered business method review petition less than four months after Virtualagility instituted infringement action and moved to stay almost immediately. *Id.* By contrast, here, CQG only recently (January 9, 2015) sought review by the USPTO. CQG provides no reason for its delay in seeking such review despite having since September 2012 when CBM review came into effect. CBM review, even of the '132 patent, is in its early stages since the USPTO just decided on December 4, 2014, to allow review. At least one court has found that the status of the administrative process weighs against a stay if it is in the early stages. *See Market-Alerts Pty. Ltd.,* 922 F.Supp.2d at 495. Additionally, CQG is not the petitioner of the CBM review recently allowed by the USPTO and will not be estopped from asserting any invalidity theories that the USPTO adjudicates during the review. CQG's delay in seeking such review on its own behalf until 60 days before the trial date suggests an effort to impede the proceedings.

CQG raises the other litigation stays in this case as evidence of a lack of prejudice to TT. Yet, the previous stays to litigation, for an appeal of the claim construction issues in the *eSpeed*

5

litigation and for settlement negotiations, conserved judicial resources by preventing the need for relitigation of certain issues and had the potential for complete resolution short of trial had an agreement been reached. That is not the situation with the present request for a stay. Additionally, courts are reluctant to stay proceedings where the parties are direct competitors as CQG and TT are here. *See Market-Alerts Pty. Ltd.,* 922 F.Supp.2d at 495. The combination here of potential prejudice to TT and the possible tactical advantage and dilatory motive attributable to CQG weighs against a stay.

*4. Burden of Litigation*

CQG only recently petitioned the USPTO for CBM review of the '304 patent. CQG also submitted its own petition for CBM review of the '132 patent. If the USPTO invalidates the patents, only then will the Court and the parties be spared the costly litigation. Yet, "the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurrent litigation." *Fresenius USA, Inc. v. Baxter Int'l, Inc.,* 721 F.3d 1330, 1339 (Fed. Cir. 2013). Therefore, this factor is neutral.

*II. Patent Eligibility under 35 U.S.C. § 101*

Patent Eligibility under 35 U.S.C. § 101 is a question of law proper for consideration by the district court. *In re BRCA1-& BRCA2-Based Hereditary Cancer Test Patent Litig.*, No. 2014-1361, 2014 WL 7156722, at *2 (Fed. Cir. Dec. 17, 2014). The Supreme Court has set forth analytical framework to distinguish patents under § 101 that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. *DDR Holdings, LLC v. Hotels.com, L.P., et al.,* 2014 U.S. App. LEXIS 22902, *20-21 (Fed. Cir. Dec. 5, 2014) (citing *Mayo v. Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S.Ct. 1289, 1294, 182 L. Ed. 2d 321 (2012)). As explained in *Alice Corp. v. CLS Bank Int'l,* 134 S.Ct. 2347, 2355, 82 L. Ed. 2d 296 (2014),

first the court determines whether the claims at issue are directed to a patent-ineligible abstract idea. If so, then the court considers the elements of each claim to determine whether the additional elements transform the nature of the claim into a patent-eligible application of that abstract idea. *Id.* After *Alice* there is no doubt that "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." *DDR Holdings, LLC,* 2014 U.S. App. LEXIS 22902, at *22. In *DDR Holdings*, the Federal Circuit found that the claims at issue there were patent-eligible because "they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at *26.

TT argues that following *DDR Holdings*, the patents-in-suit are patent-eligible under § 101 and that TT is likely to ultimately prevail in the covered business method review in the USPTO. Examination by this Court of the patents-in-suit under § 101 is a question for another time as "Congress clearly did not intend district courts to hold mini-trials reviewing the PTAB's decision on the merits of the CBM review." *Virtualagility, Inc.,* 759 F.3d at 1313. Nevertheless, it is a question properly within this Court's purview and will necessarily be addressed prior to the conclusion of the trial.

**Conclusion**

Based on the foregoing, this Court denies CQG's Motion to Stay [845].

IT IS SO ORDERED.

Date: January 13, 2015

Entered: /s/ Sharon Johnson Coleman
Sharon Johnson Coleman
U.S. DISTRICT JUDGE

7