**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Trading Technologies International, Inc., | Civil Action No. 05-CV-4811 |
| Plaintiff, | Judge Sharon Johnson Coleman |
| v. | Magistrate Judge Sidney I. Schenkier |
| CQG, Inc. and CQGT, LLC, | |
| Defendants. | |

**MOTION TO BIFURCATE ISSUES OF WILLFULNESS
AND DAMAGES FROM ISSUES OF LIABILITY**

**INTRODUCTION**

As evidenced by its exhibit list, Trading Technologies International (TT) does not want to try its infringement claim on the merits. Instead, it wants a jury to resolve liability based on all manner of utterly irrelevant, but highly inflammatory evidence, such as consultation with astrologers and the tragic mistake of prior trial counsel.

To avoid imposing unnecessary burdens on the Court and jurors, and to protect CQG's due process right to a fair trial, CQG respectfully moves for an order bifurcating trial in this matter into two phases—first infringement, and then willfulness and damages if necessary. Doing so will streamline the presentation of complex evidence, reduce the likelihood of jury confusion, and potentially shorten the time needed for trial. The first phase of the trial would address validity and infringement issues relating to the patents in suit. If the jury renders a verdict of liability in the first phase, and the patents are determined to not be invalid, the second phase will follow immediately thereafter before the same jury and would address damages and willfulness.

Bifurcation is common in patent cases, and would greatly assist the Court, the jury, and the parties. TT intends to present a complicated damages analysis that seeks to impose a royalty on CQG for hundreds of millions of individual transactions that were completed by CQG's customers using over 400 different versions of CQG software over a decade. TT's damages analysis assumes that every version of CQG's accused software is, in fact, infringing, and that every transaction that was completed with this software is therefore subject to its royalty. The jury may agree with TT, or it may agree with CQG that none of the accused software is infringing.

It is also possible that the jury will conclude that only some subset of the accused software is infringing. TT's damages analysis does not readily account for this possibility, and the jury would be left to merely guess as to how it should apply TT's complicated damage analysis in such a situation. The most straightforward way to prevent a completely arbitrary result in this situation is to have the jury address liability first, and then have the parties present evidence and arguments concerning damages and willfulness after the jury makes a determination about which versions of CQG's software, if any, infringe TT's patents.

Bifurcation might also eliminate the Court's need to address a large number of the party's pre-trial motions in limine, objections to documents, and other evidentiary objections. TT has made clear through its document list and deposition designations that it hopes to introduce a wide range of irrelevant and inflammatory evidence—such as the disbarment and plea bargain of a former CQG executive, internal settlement-related communications, reliance on astrology charting, and other irrelevant emails of CQG employees—to prejudice CQG in the eyes of the jury. CQG does not believe that any of this evidence is relevant for any purpose. But there is no question that this evidence is irrelevant to the question of liability, which will focus on an objective explanation of what TT's patents cover and how CQG's software works. Deferring the presentation of evidence concerning damages and willfulness will provide the Court more time to consider these evidentiary objections, and may eliminate the need to address them at all.

For all these reasons, CQG respectfully requests that the Court bifurcate willfulness and damages issues from liability issues.

**ARGUMENT**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more issues." Fed. R. Civ. P. 42(b). "Courts have found that concerns of prejudice, complexity, expedition, and judicial economy are particularly significant in patent cases[.]" *Princeton Biochems., Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997).

For this reason, the Federal Circuit has explicitly endorsed the practice of bifurcating issues of willfulness and damages in patent infringement trials from issues of liability. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1319 (Fed. Cir. 2013) (en banc) ("[W]e wish to make clear that district courts, in their discretion, may bifurcate willfulness and damages issues from liability issues in any given case.").

Bifurcation is an essential tool that courts use in patent cases in order to avoid overwhelming the jury. *See also Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, Civ. No. 08-343-SLR, 2009 U.S. Dist. LEXIS 76006, at *2 (D. Del. Aug. 26, 2009) ("[B]ifurcation is appropriate, if not necessary, in all but exceptional patent cases."); *Ciena Corp. v. Corvis Corp.*, 210 F.R.D 519, 521 (D. Del. 2002) ("In the context of patent cases, 'experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.'") (citation omitted); *see also A.L. Hansen Mfg. Co. v. Bauer Prods.,* No. 03 C 3642, 2004 U.S. Dist. LEXIS 8935 (N.D. Ill. May 17, 2004) (granting bifurcation); *Pfizer Inc. v. Novopharm Ltd.*, No. 00 C 1475, 2000 U.S. Dist. LEXIS 18153, *10-12 (N.D. Ill. Dec. 13, 2000) (granting bifurcation).

Bifurcation is appropriate if separate trials (1) would avoid prejudice to a party or promote judicial economy; (2) would not unfairly prejudice the non-moving party; and (3) would not violate the Seventh Amendment. *See Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).

All three criteria for bifurcation are easily satisfied here.

### A. Bifurcation Will Promote Judicial Economy in This Case and Streamline the Issues for a Jury to Resolve

"[T]he burden imposed on a jury in a patent trial is extraordinary," and should be carefully managed to avoid overwhelming the jury. *Dutch Branch*, 2009 U.S. Dist. LEXIS 76006, at *2. "[J]uries are tasked with resolving complex technical issues regarding infringement," *see id.*, and then after they make these determinations, are asked to evaluate an appropriate measure of damages.

The difficulty of affixing damages in a patent case at the same time that a jury evaluates liability is a common reason that courts cite for bifurcating damages from liability issues:

> In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue or appeal without having reached the often time-consuming and difficult damages question.

*Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982-83 (D. Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984); *Novopharm Ltd. v. TorPharm, Inc.,* 181 F.R.D. 308, 310-11 (Fed. Cir. 2000) ("Patent cases are often uniquely amenable to bifurcation because of the complex nature of the

4

damages determination."); *Dutch Branch*, 2009 U.S. Dist. LEXIS 76006, at *3 ("Absent bifurcation, jurors then are expected to understand the commercial complexities of the relevant market (or, even more impenetrable, the commercial complexities of the hypothetical market) in order to determine the economic consequences of their liability decisions."); *In re Recombinant DNA Tech. Patent & Contract Litig.,* 30 U.S.P.Q. 2d 1881, 1899, 1994 U.S. Dist. LEXIS 20993, at *6 (S.D. Ind. Mar. 2, 1994) ("The information the jury must comprehend to determine the liability issues alone is burdensome. Admitting financial data that also is potentially time-consuming and complex could make that burden unmanageable.").

In this case, the issues of liability and damages are both independently complex. TT's infringement allegations encompass three different theories of infringement that are directed to over 400 different versions of CQG software that CQG released over a decade. These different software versions have different functionality that is directly relevant to the question of whether the software is infringing or not. The threshold question of whether any of this software is infringing will benefit from the jury's undivided attention.

Separately, TT's theory of damages is set forth in an expert report that is over 8,000 pages long. It purports to calculate a royalty that CQG must pay each time its software is used to complete a trade using infringing software. Calculating a reasonable royalty depends on an analysis of 15 separate "*Georgia-Pacific*" factors, each one of which is complex. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc.*, 59 U.S.P.Q. 2d 1088, 1089-90, 2001 U.S. Dist. LEXIS 10738, at *6 (C.D. Cal. May 4, 2001) ("A determination of 'reasonable royalty' requires evidence on fifteen different factors, each of which is complex."). TT then applies this royalty to

hundreds of millions of different transactions that have been initiated or completed using CQG's software.

TT's evidentiary presentation concerning damages and willfulness is far more factually intensive than its presentation on liability. To address TT's damages and willfulness claims, 10 witnesses *will* be called and 51 witnesses *may* be called. An additional 23 deposition transcripts will be introduced on these topics. In contrast, if the Court grants bifurcation, the infringement phase of trial should consist largely of just two infringement experts comparing CQG's software to the asserted patent claims. Though still involved, the issues are far more manageable, and if the jury determines there is no liability, the other 84 party and third-party witnesses designated on damages and willfulness issues will never need to testify.

Standing alone, the complexity of TT's damages analysis warrants bifurcation. An additional complication that is particular to TT's damages theory results from the variety of CQG software that TT has challenged. Even if TT's damages theory is accepted, TT's reasonable royalty only applies to transactions initiated or completed with infringing software. Yet, the parties will not know how many transactions that is until the jury renders its decision regarding liability and identifies what versions of CQG's software, if any, are infringing. TT will certainly argue that the software is all infringing, and CQG will argue that none of it is. The jury, however, may choose any number of intermediate positions between those two extremes.

It would be nearly impossible for the parties to anticipate all of the different intermediate results that the jury could reach, and to arm the jury with alternative damages theories for each scenario. What makes more sense is for the jury to render its decision on liability first, and then have the parties present evidence and arguments concerning damages and willfulness in light of those findings.

Bifurcating the issues of damages and willfulness from liability will allow the jury to concentrate its attention first on whether any software is infringing without having to separately evaluate TT's enormously complex damages theory. This makes more sense, which is why so many courts bifurcate and try these issues separately.

### B. Bifurcation Will Shield the Jury's Liability Determination from A Long List of Inflammatory and Irrelevant Evidence that TT Seeks to Admit for Other Purposes

Bifurcation of damages and willfulness issues will also shield the jury's liability determination from a long list of inflammatory and irrelevant evidence that TT seeks to introduce to prejudice CQG in the eyes of the jury. TT's exhibit list and depositions designations make clear that it intends to submit evidence to the jury concerning the disbarment and plea bargain of a former CQG executive, CQG's internal evaluation of TT's settlement demands, reliance on astrology charting, and other irrelevant emails of CQG employees. CQG does not believe that any this evidence is relevant for any purpose, and has filed motions in limine to have this evidence excluded.

Presumably TT will oppose CQG's motions. What TT cannot dispute, however, is that this evidence has no relevance to the question of liability, which will focus on an objective explanation of what TT's patents cover and how CQG's software operates. Deferring the presentation of evidence concerning damages and willfulness will thus protect CQG from having this evidence unfairly influence the jury's liability determinations. It will also provide the Court more time to consider these evidentiary objections, and may eliminate the need to address them at all.

### C. Bifurcation of Trial Will Not Prejudice TT or Impinge on Its Seventh Amendment Rights

Bifurcation does not prejudice TT in any way. If the jury finds no infringement, a trial on willfulness and damages will not be necessary. Avoiding a needlessly prolonged trial benefits both parties, as well as the Court, jurors, and third-party witnesses. If, on the other hand, the jury finds infringement, TT will be able to immediately present its evidence regarding damages and willfulness to the same jury that has already made a determination regarding liability, and that is thus familiar with the evidence.[1]

Bifurcation of willfulness and damages issues from liability issues does not violate the Seventh Amendment given that a jury will hear and resolve all questions for which there is a jury right. *See Robert Bosch*, 719 F.3d at 1318 ("[W]e did not take this case en banc to determine whether the issues of infringement and willfulness are so interwoven that trying them separately violates the Seventh Amendment. Precedent of this court, nonetheless, indicates that it does not."). Even in situations where separate juries hear evidence concerning willfulness and damages from the one that resolves liability issues, there is no Seventh Amendment issue. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008) (rejecting argument that plaintiff had right under Seventh Amendment to have same jury decide willfulness and infringement).

### CONCLUSION

CQG respectfully requests that the Court grant this motion to bifurcate. TT should not be permitted to win on liability by enflaming jury passions with evidence irrelevant to infringement, such as astrology or attorney disbarment. The bulk of the voluminous evidence in this case

---

[1] Courts that reject bifurcation in patent cases often do so because a defendant proposes bifurcating both discovery and trial with respect to damages and willfulness. The practical result of such a proposal is that different juries hear the evidence regarding liability and damages. That would not be the case here.

relates only to willfulness and damages, issues that a jury may never need to decide. But if a jury must resolve these issues, it can do so in a focused, efficient manner once TT's various infringement theories are adjudicated.

Dated: February 6, 2015　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　By: /s/ Adam G. Kelly
　　　　　　　　　　　　　　　　　　　　　　　　　　　Adam G. Kelly
　　　　　　　　　　　　　　　　　　　　　　　　　　　William J. Voller III
　　　　　　　　　　　　　　　　　　　　　　　　　　　Christopher M. Swickhamer
　　　　　　　　　　　　　　　　　　　　　　　　　　　John A. Cotiguala
　　　　　　　　　　　　　　　　　　　　　　　　　　　LOEB & LOEB LLP
　　　　　　　　　　　　　　　　　　　　　　　　　　　321 North Clark, Suite 2300
　　　　　　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654
　　　　　　　　　　　　　　　　　　　　　　　　　　　(312) 464-3100 Telephone
　　　　　　　　　　　　　　　　　　　　　　　　　　　(312) 464-3111 Facsimile

　　　　　　　　　　　　　　　　　　　　　　　　　　　Terry D. Garnett (pro hac vice)
　　　　　　　　　　　　　　　　　　　　　　　　　　　Laura A. Wytsma (pro hac vice)
　　　　　　　　　　　　　　　　　　　　　　　　　　　LOEB & LOEB LLP
　　　　　　　　　　　　　　　　　　　　　　　　　　　10100 Santa Monica Boulevard
　　　　　　　　　　　　　　　　　　　　　　　　　　　Suite 2200
　　　　　　　　　　　　　　　　　　　　　　　　　　　Los Angeles, California 90067
　　　　　　　　　　　　　　　　　　　　　　　　　　　(310) 282-2000 Telephone
　　　　　　　　　　　　　　　　　　　　　　　　　　　(310) 282-2200 Facsimile

　　　　　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEYS FOR DEFENDANTS*
　　　　　　　　　　　　　　　　　　　　　　　　　　　*CQG, INC. and CQGT, LLC*

**CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's Case Management/Electronic Case Filing and/or electronic mail on February 6, 2015.


By:   /s/ Adam G. Kelly
          Adam G. Kelly