UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | |
| Plaintiff | Judge Sharon Johnson Coleman |
| v. | Civil Action No. 05 C 4811 |
| CQG, INC., and CQGT, LLC, | |
| | **FILED UNDER SEAL** |
| Defendants | |

**TT'S MOTION FOR JUDGMENT AS A MATTER OF LAW THAT
<u>CQG WILLFULLY INFRINGED THE TT PATENTS</u>**

TT has more than met its burden of providing a sufficient evidentiary basis for a reasonable jury to find that CQG willfully infringed the patents-in-suit. TT presented substantial evidence that (1) CQG did not obtain competent opinions of counsel, (2) CQG did not and could not reasonably rely on the opinions it did obtain, (3) CQG intentionally attempted to hide its infringement of the patents-in-suit, including by making misrepresentations to its own counsel, TT and the Court, and (4) CQG did not act within the standards of commerce in its industry. Therefore, this Court should grant TT's motion for judgment as a matter of law that CQG did (and deny CQG's motion that CQG did not) willfully infringe the patents-in-suit.

**I.  Applicable Legal Standards**

    **A.  Motion for Judgment as a Matter of Law**

"Rule 50(a) of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable

1

jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *McMillan v. Stoll*, No. 09 C 1622, 2012 WL 707117 at *1 (N.D. Ill. Mar. 5, 2012) (quoting *Schandelmeier v. Bartels v. Chicago Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011)).

### B. Willful Infringement

The current standards for willfulness are set forth in the *Seagate* and *Bard* cases. *In re Seagate Tech., LLC*, 479 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*); *Bard Peripheral Vascular Inc. v. WL Gore and Assocs. Inc.*, 682 F.3d 1003, 1006 (Fed. Cir. 2012). The willfulness analysis is a two-part analysis with both an objective and a subjective component. *Bard Peripheral Vascular Inc.*, 682 F.3d at 1005. While the objective component is a question of law for the Court (which may be based on underlying questions of fact), the subjective component is a question for the fact finder. *Id*. at 1006.

To avoid a finding of objective recklessness, a defendant needs to set forth a "substantial question" as to the validity or non-infringement of the patent at issue. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, No. 2014-1114, 2015 WL 151557, at *5 (Fed. Cir. Jan. 13, 2015). One key factor in the objective-recklessness determination is whether a defendant obtained and relied on a **competent** opinion of counsel. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368-69 (Fed. Cir. 2006) (explaining that willfulness may be found in cases in which opinions are incompetent, such as where attorney does not examine necessary facts, or where the analysis is superficial) (citing *Read Corp. v. Portec*, Inc., 970 F.2d 816, 828-31 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)).

2

In order to determine whether a particular opinion of counsel is competent, courts (guided by expert opinion) look to many factors, some of which relate to whether the opinion was prepared appropriately, others of which relate to the substantive defense to infringement. *See Golden Blount, Inc.*, 438 F.3d at 1368-69. For example, courts consider: (1) whether counsel examined the patent file history; (2) whether the opinions were oral or written; (3) the objectivity of the opinions; (4) whether the attorneys rendering the opinions were patent lawyers; (5) whether the opinions were detailed or merely conclusory; and (6) whether material information was withheld from the attorney. *See Chiron Corp.*, 268 F.Supp.2d at 1121; *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190-1193 (Fed. Cir. 1998) (finding evidence on record that information was withheld from attorney was sufficient for the jury to find by clear and convincing evidence that defendant willfully infringed); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 (Fed. Cir. 1989) (conclusory reference to infringement, particularly with respect to the doctrine of equivalents, and failure to consult the prosecution history, resulted in finding of willfulness); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996) ("To reasonably rely on an opinion, it must be authoritative, not just conclusory, and objective.").

Even where there is a competent opinion, willfulness may still be at issue if the infringer did not seek the opinion in good faith, ignored the opinion, or otherwise did not actually rely upon it. *Chiron Corp. v. Genentech, Inc.*, 268 F.Supp.2d 1117, 1121, 1123 (E.D. Cal. 2002) (citing and quoting *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d at 1191 ("In order to provide such a prophylactic defense, however, counsel's opinion must be premised upon the best information known to the defendant. Otherwise, the opinion is likely to be inaccurate and will be ineffective to indicate the defendant's good faith intent. Whenever material information is

3

intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion, the opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement.").

## II. The LeMond Opinions Were Not Competent

Both parties agree that an opinion must be competent in order to provide a defense to willfulness. (Trial Tr. (Nixon) at 1330:11-24. The testimony in this case establishes that the LeMond opinions (PTX236, PTX237) were not competent.

### A. The LeMond Opinions Were Based on Faulty and Incomplete Information

Mr. LeMond admitted in his testimony that his opinion could only be as good as the information on which it was based. (PTX2921 at 2921.0005, 75:02-03, 05). Mr. LeMond also stated he believed he would have informed CQG that it was important for him to have complete and accurate information about the products, because it is a best practice to do so. (PTX2921 at PTX2921.0015, 169:23-25, 170:02-05, 170:8, 10). According to the opinions, the sole information on which the opinions were based is a webex from Mike Glista. (PTX236 at 236.0001; PTX237 at 237.0001). The webex itself was no more than half an hour. (PTX970 at 970.0002). Mr. LeMond could not identify any additional information he had reviewed for purposes of the opinion other the webex from Mr. Glista. (PTX2921 at 124:20-22, 125:20-126:9, 126:16-127:02, 127:09-14). Notably, in preparing his opinions, Mr. LeMond was not given access to any of the three alleged original designers of the DOMTrader – Mr. Mather, Mr. Shterk and Mr. Katin – even though all three were still with CQG at that time.

Mr. Glista testified that he did not know everything about the products when he presented the webex to Mr. LeMond. (Trial Tr. (Glista) at 1811:17-1812:6). For example, Mr. Glista

admitted that he was unaware that the market window could be resized, even though the ability to resize the market window has been in the product since the first version. (Trial Tr. (Glista) at 1815:21-1816:24). Also, Mr. Glista was unaware as to whether or not the prices move when price selection is activated. (Trial Tr. (Glista) at 1825:4-10).

The opinions themselves contain only a very limited description of the functionality of the CQG products; indeed only a short paragraph with respect to each accused product. (PTX236 at PTX236.0001-0002; PTX237 at PTX237.0001-0002; PTX2921 at 80:12-81:10, 82:6-83:1; Trial Tr. (Nixon) at 1344:23-1346:9. Mr. LeMond testified that he does not recall being aware of any mode in which the products could have operated in a fashion other than what he described in the opinions. (PTX2921 at PTX2921.0006, 81:06-08, 10; 82:6-9). No product information is attached to the opinions, and Mr. LeMond testified that if he had such materials, he would have include them. (PTX236; PTX 237; PTX2921 at PTX2921.0011, 125:11-21, 125:23-126:09, 126:16-127:02) Both Mr. Nixon and Mr. Hartmann testified that it is a best practice to include such materials. (Trial Tr. (Nixon) at 1333:6-16.

Finally, it is apparent that CQG withheld complete information from its own attorneys and from TT. Mr. Borsand testified that CQG's litigation counsel, Ms. Wang, was frustrated that she seemed to be getting bad information from CQG. (Trial Tr. (Borsand) at 1159:17-1162:4; 1193:24-1194-25). Mr. Mather confirmed this to be the case. (Trial Tr. (Mather) at 1715:23-1716). Given that even CQG's litigation counsel was not aware of the actual functionality of the products in the case, it is unlikely that Mr. LeMond had complete and accurate information at the time of his opinions.

  **B. The LeMond Opinions Did Not Competently Apply Relevant Law to the Facts of the Case**

In his opinions, Mr. LeMond identified several legal requirements that serve as the bases for his analysis. Yet all parties who testified on this issue admit that none of these analyses are actually present in the LeMond opinions. Specifically, Mr. LeMond's opinions rely on the following points of law:

- The necessity of performing claim construction (PTX236 at 236.0002, PTX237 at 237.0003; PTX2921 at PTX2921.0007, 87:22-88:5);
- The necessity of consulting the specification and prosecution history to determine whether a purported ordinary meaning is consistent with the words of the inventor (PTX236 at 236.003; PTX 237 at 237.0003; PTX2921 at PTX2921.0008, 90:2-17); and
- The necessity of analyzing the prosecution history for purposes of conducting a Doctrine of Equivalents analysis or Doctrine of Prosecution History Estoppel analysis (PTX236 at 236.0004; PTX 237 at 237.0005; PTX2921 at PTX2921.0008, 91:12-22).

The testimony in this case indicates that none of these necessary analyses are actually present in the Lemond opinions. No one was able to identify actual claim construction in the LeMond opinions, including Mr. LeMond himself. (PTX 2921 at PTX2921.0007, 88:18-89:8; Trial Tr. (Nixon) at 1340:14-1341:4. No one was able to identify an analysis of the claim terms in light of the specification and prosecution history to determine whether ordinary meaning was used or whether the inventor acted as his own lexicographer. (PTX2921 at PTX2921.0008, 90:18-91:01; Trial Tr. (Nixon) at 1342:19-1343:24. And no one was able to identify an analysis of the prosecution history for purposes of performing the Doctrine of Equivalents and

prosecution history estoppel analysis. (PTX2921 at PTX2921.0008, 91:2-11; 91:23-92:1; Trial Tr. (Nixon) at 1341:5-1342:14.

### C. The LeMond Opinions Were Never Updated

Mr. Schroeter contends that CQG has relied on the LeMond opinions since they were issued. (Trial Tr. (Schroeter) at 2248:15-2249:2). However, those opinion letters were never updated, even as CQG's product underwent significant changes and numerous rulings came from the various courts dealing with the patent-in-suit. (PTX2921 at PTX2921.0010, 107:11-22; 107:24-108:7; Trial Tr. (Nixon) at 1350:24-1353:5; Trial Tr. (Schroeter) at 2287:10-2288:5, 2305:13-18, 2310:6-16. This is true even though shortly after the opinions issued, Ernie Popke expressed concern due to the ruling on preliminary injunction in the eSpeed litigation. (PTX0591). After conferring with Mr. Popke, Mr. LeMond indicated that he would provide a written detailed analysis and updated opinion letters. (PTX0247). But that never happened. (PTX2921 at PTX2921.0010, 107:11-107:22, 107:24-108:07). While Mr. Schroeter now contends that he had a follow up call with Mr. LeMond (Trial Tr. (Schroeter) at 2256:6-20), he admitted that he never discussed such a call in his deposition. (Trial Tr. (Schroeter) at 2286:8-2287:6; 2288:3-5). Thus, his testimony conveniently recalled for purposes of trial should be discounted.

### III. CQG Did Not and Could Not Reasonably Rely Upon the LeMond Opinions

Even were the LeMond opinions competent, which they are not, the evidence is clear that CQG could not and did not actually rely upon the letters. While Mr. Schroeter testified that there was nothing in the opinions to indicate to him that Mr. LeMond did not understand the CQG products, he was in no position to assess that information, as he himself had no

7

understanding of how the products worked. (Trial Tr. (Schroeter) at 2279:18-2281:17, 2284:16-2285:5). And while Mr. Mather now conveniently testifies that he relied upon the LeMond opinions, at his deposition he could not recognize the opinions or Mr. LeMond's name. (Trial Tr. (Mather) at 1683:20-1684:24).

Moreover, In June 2005, just after CQG had obtained the opinions and shortly before the litigation began, Mr. Schroeter was indicating that he was intending to fight the case no matter what, that in fact he wanted to "push the dom interface down Harris's throat…." (PTX 342). He even referenced potential invalidity of the patents, but at no point did he mention non-infringement.

Finally, given that CQG was providing different information about functionality to its astrologer (PTX403), its litigation counsel Nina Wang (Trial Tr. (Borsand) at 1157:17-1162:4); Trial Tr. (Mather) at 1715:23-1718:24), and Mr. LeMond, CQG should have known that it could not rely upon the opinions.

## IV. CQG Intentionally Hid Its Infringement of the Patents-in-Suit

Throughout the entirety of the suit, CQG has misrepresented the functionality of its products to TT, to its litigation counsel and to the Court. Beginning in 2007, when TT and CQG were attempting to negotiate resolution of the case based on a summary judgment motion CQG had filed, CQG presented faulty representations of its product functionality.

In 2007, Mr. Schroeter filed a declaration in support of CQG's motion for summary judgment (PTX0232). In that declaration, Mr. Schroeter stated "[S]ince DOMTrader's inception, the responsive scale of DOMTrader features a display of prices that automatically adjusts to keep

8

the inside market on the screen at all times." (PTX0232.0003). This statement, however, was not accurate and yet CQG has never withdrawn the motion or the declaration.

In 2010, TT indicated to CQG that it had identified behavior in the DOMTrader that was inconsistent with previous representations CQG had made. (Trial Tr. (Borsand) at 1157:17-1162:4; 1193:24-1194-25; Trial Tr. (Burns) at 761:1-762:13; Trial Tr. (Schroeter) at 2310:17-2311:1; Trial Tr. Shterk at 1497:11-1498:3). Ms. Wang was surprised to learn that such functionality existed in the DOMTrader. (Trial Tr. (Borsand) at 1160:18-19). CQG personnel testified that this was the first they had known of such functionality. (Trial Tr. (Shterk) at 1497:19-25; Trial Tr. (Katin) at 2187:14-20; Trial Tr. (Schroeter) at 2267:13-15). However, CQG's own documents proved these statements to be false. Indeed, specific functionality related to market window resizing had been in the product since the original DOMTrader. (DTX2238). And CQG had known of the effects of resizing the market window since at least 2006. (PTX191; *see also* PTX190 (showing knowledge in 2009)).

**V.     CQG Did Not Act Within the Standards of Commerce for Its Industry**

Rather than reacting as a reasonable company should to allegations of infringement, CQG decided to push the litigation, no matter what. (PTX0342). And indeed, rather than providing accurate information to its litigation counsel and its opinion counsel, CQG instead provided information about actual functionality and its sources to its astrologer. (PTX403). Indeed, CQG routinely spent more time and effort making sure that it filed documents or released beta version on certain days at certain times, as a result of astrological advice (*see, e.g.*, PTX0429, PTX0430, PTX0431), than it did in properly addressing TT's allegations. Indeed, CQG was more concerned about incorporating an entity to guide it through the "astrowarfare" of patent litigation

9

on a certain day, than it was about potential infringement of the patents-in-suit. (PTX0394). And CQG's president, Mr. Schroeter, and marketing director, Mr. Fischer, each realized that these types of business practices would come back to haunt CQG. (PTX2465). This is not the behavior of a company acting within the standards of commerce in its industry.

## VI. Conclusion

For these reasons, TT requests that this Court grant TT's motion for judgment as a matter of law that CQG willfully infringed the patents-in-suit, and deny CQG's motion that it did not willfully infringe.

Respectfully submitted,

Date: March 16, 2015  By:  s/ S. Richard Carden
Leif R. Sigmond, Jr. (ID No. 6204980)
(sigmond@mbhb.com)
Matthew J. Sampson (ID No. 6207606)
(sampson@mbhb.com)
Michael D. Gannon (ID No. 6206940)
(gannon@mbhb.com)
S. Richard Carden (ID No. 6269504)
(carden@mbhb.com)
Jennifer M. Kurcz (ID No. 6279893)
(kurcz@mbhb.com)
Cole B. Richter (ID No. 6315686)
(richter@mbhb.com)
**McDonnell Boehnen Hulbert & Berghoff LLP**
300 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 913-0001
Fax: (312) 913-0002

Steven F. Borsand (ID No. 6206597)
(Steve.Borsand@tradingtechnologies.com)
**Trading Technologies International, Inc**.
222 South Riverside
Suite 1100
Chicago, IL 60606

Tel: (312) 476-1000
Fax: (312) 476-1182

**Attorneys for Plaintiff,
TRADING TECHNOLOGIES
INTERNATIONAL, INC.**

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing TT'S MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CQG WILLFULLY INFRINGED THE TT PATENTS was served on March 16, 2015 as follows:

***Via Filing Via this Court's CM-ECF System, which caused a copy to be served on all registered users and Via Email:***

**Counsel for CQG, Inc., and CQGT, LLC:**

Adam G. Kelly
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
akelly@loeb.com

Laura A. Wytsma
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
lwytsma@loeb.com

William Joshua Voller
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
wvoller@loeb.com

s/ S. Richard Carden