UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC.,<br><br>      Plaintiff<br><br>      v.<br><br>CQG, INC., and CQGT, LLC,<br><br>      Defendants. | Judge Sharon Johnson Coleman<br><br>Civil Action No. 05 C 4811 |

**TT'S MOTION UNDER RULE 50 (A) FOR
JUDGMENT AS A MATTER OF LAW ON THE ISSUE
OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

Pursuant to Federal Rule of Civil Procedure Rule 50, TT hereby moves for judgment as a matter of law on the issue of infringement under the doctrine of equivalents. Judgment is appropriate as no reasonable jury could find that the accused products do not infringe under the doctrine of equivalents.

Under the doctrine of equivalents, a product or a method infringes a claim if it contains elements or performs steps corresponding to each and every requirement of the claim, or an equivalent thereto, except that an equivalent may not eliminate or ignore an element. In other words, it is not required that every element be literally met in the Accused Products or Accused Method, as long as the product or method includes an equivalent to any element that is not literally present. An accused product has an equivalent to an element or step recited in a claim if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial." One way to determine if the differences are insubstantial would be to determine whether the element or step: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim. Another way to determine if the differences are insubstantial is to determine whether the element or step in the Accused Product or Accused Method is interchangeable with the element or step recited in the claim. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997); *Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 6132598 (N.D. Ill. 2013) (citing *Mas–Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)).

The scope of equivalents can be limited by the doctrine of prosecution history estoppel ("PHE"). For there to be a rebuttable presumption of PHE, three factors must be established: (1) an amendment to the claims that further limits the claim; (2) the amendment must have been for

1

purposes of patentability; and (3) the accused product at issue must be within the scope of the surrender resulting from the amendment. *Pacific Coast Marine Windshields Ltd. v. Malibu Boats. LLC,* 739 F.3d 694, 702 (Fed. Cir. 2014).[1] If any one of these is not present, then there is no PHE. If all three are present, then there is a rebuttable presumption of PHE. *See, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002). TT does not contest that the *eSpeed* litigation already established factors (1) and (2). Those are not at issue here. However, the *eSpeed* litigation did ***not*** determine factor (3) – which is a case-by-case determination depending on the accused product. Factor (3) is also determined by the actual language of the amendment. Even if there is a rebuttable presumption of PHE (which there is not), TT can overcome that rebuttable presumption if it can establish any of the *Festo* exceptions – which include unforeseeability and tangential.

Mr. Thomas walked the jury through the doctrine of equivalents analysis including the function/way/result test explaining why the various versions of the DOMTrader with price hold (hover) are equivalent to the claimed invention. He also went through an analysis as to the interchangeability of the accused equivalent with the claim element. *See* Trial Transcript at 671 – 681. Mr. Thomas explained that one important purpose of a static price axis was to ensure that the trader got the price he was intending to get. The invention accomplishes this by aligning the static price axis with an order entry region for receiving single action commands (*e.g.*, the single click of a mouse, etc.). Price hold (hover) accomplishes the same function (guaranteeing an intended price) in the same way (by keeping price levels fixed) with the same result (the trader gets the intended price). Indeed, it is undisputed that price hold (hover) is designed to ensure that the trader gets her price. *Id*. at 1532 (Shterk), 1683 (Mather), 1817 (Glista), 2002 (Prince).

---

[1] Although *Pacific Coast* is a design patent case, "the principles of prosecution history estoppel apply to design patents as well as utility patents." *Pac. Coast*, 739 F.3d at 702.

2

Moreover, there is no evidence in the record contradicting Mr. Thomas' analysis. Rather, all CQG's expert Dr. Mellor said on the issue was that something that moves cannot be equivalent to static. *Id*. at 1910-1911 (Mellor). This statement is of course an uninformative tautology. If there were no movement, there would be literal infringement and no need to resort to the doctrine of equivalents. Moreover, in the accused equivalent, there is no movement. As long as price hold is maintained, the underlying price at which the trader will enter the order does not move. Thus, the equivalence with the static limitation.

The record establishes that use of price hold in the market mode is an equivalent of the claimed element. The remaining question is whether this equivalent was surrendered during prosecution, *i.e.*, does PHE apply? Initially, the accused equivalent is not within the scope of surrender as a result of the amendment. All that was surrendered by the amendment were products where prices move in response to every change in the inside market. That is not the case here. *Id*. at 655 (Thomas), 1538 (Shterk), 1927 (Mellor). Therefore, PHE should not apply.

Even if there is a presumption of total surrender, the record supports that TT has rebutted that presumption. Evidence that has come in during the trial clearly shows that TT has established the applicability of the unforseeability and tangential *Festo* exceptions to overcome the rebuttable presumption. TT's expert testified as to why one of ordinary skill in the art would have viewed the accused functionality, the DOMTrader with price hold, as unforeseeable at the time of the amendments. Trial Transcript at 679:17 – 681:6. For example, Mr. Thomas explained that in mission critical applications such as the trading screens covered by the claims, it would have been "unthinkable" to have "price hold/hover" functionality in which the real price value associated with a cursor for order entry is different than the displayed price label. *Id*.

3

Mr. Thomas also testified as to why one of ordinary skill in the art would have viewed such functionality as tangential to the purpose of the amendments. *Id.* at 681:6-21. For example, Mr. Thomas explained that the purpose of the amendment was to deal with situations like the conventional (Figure 2) screens where, when a displayed number moves, the real value of that cell changes. *Id.* Mr. Thomas explained that price hover/hold functionality that keeps the real value the same, but moves the displayed price label was tangential to this purpose. *Id.* CQG offered no proof to rebut any of this at trial. For example, Dr. Mellor said nothing to challenge Mr. Thomas' testimony on the unforseeability or tangential exceptions. *See generally id.;* Trial Tr. vol. 11, 1869 *et. seq* Mar. 11, 2015.

Accordingly, the evidence established at trial clearly shows that the accused equivalent, *i.e.*, a DOMTrader with the price hold functionality, was not foreseeable at the time of the amendments and was tangential to the purpose of the amendment. Thus, even if there is a rebuttable presumption of PHE, that presumption has been overcome and PHE does not apply to the accused products.

The record clearly demonstrates that the DOMTrader including price hold is equivalent to the claimed invention. The testimony is virtually unrebutted. As a result, TT has carried its burden to establish infringement under the doctrine of equivalents and no reasonable jury could find otherwise.

          Respectfully submitted,

Date: March 16, 2015          s/ Brandon J. Kennedy
          Leif R. Sigmond, Jr. (ID No. 6204980)
          (sigmond@mbhb.com)
          Matthew J. Sampson (ID No. 6207606)
          (sampson@mbhb.com)
          Michael D. Gannon (ID No. 6206940)
          (gannon@mbhb.com)

S. Richard Carden (ID No. 6269504)
(carden@mbhb.com)
James C. Gumina (ID No. 6195604)
(gumina@mbhb.com)
Brandon J. Kennedy (ID No. 6306310)
(kennedy@mbhb.com)
Cole B. Richter (ID No. 6315686)
(richter@mbhb.com)
**McDonnell Boehnen Hulbert & Berghoff LLP**
300 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 913-0001
Fax: (312) 913-0002

Steven F. Borsand (ID No. 6206597)
(Steve.Borsand@tradingtechnologies.com)
**Trading Technologies International, Inc**.
222 South Riverside
Suite 1100
Chicago, IL 60606
Tel: (312) 476-1000
Fax: (312) 476-1182

**Attorneys for Plaintiff,
TRADING TECHNOLOGIES
INTERNATIONAL, INC.**

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing TT'S MOTION UNDER RULE 50 (A) FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS was served on March 16, 2015 as follows:

*Via Filing Via this Court's CM-ECF System, which caused a copy to be served on all registered users and Via Email:*

**Counsel for CQG, Inc., and CQGT, LLC:**

Adam G. Kelly
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
akelly@loeb.com

William Joshua Voller III
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
wvoller@loeb.com

Laura A. Wytsma
Loeb & Loeb LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA 90067
lwytsma@loeb.com

s/ Brandon J. Kennedy