**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) | Civil Action No. 05 C 4811 |
| CQG, INC., and CQGT, LLC, | ) ) | |
| Defendants. | ) ) | |

**TT'S MOTION FOR JUDGEMENT AS A MATTER OF LAW CONCERNING PHE
AND INFRINGEMENT UNDER THE DOE AND FOR A NEW TRIAL**

# I.    INTRODUCTION

On March 13, 2015 this Court entered an Order (Dkt. 1175) finding that "prosecution history estoppel applies to bar the doctrine of equivalents."  This ruling was made even though there was no proper motion for judgment as a matter of law on this issue pending before the Court.  Indeed, the order (Dkt. 1175) stemmed from the parties jury instruction conference, and specifically from TT's bench memo relating to the jury instructions for prosecution history estoppel ("PHE") (Dkt. 1144) and CQG's response to that bench memo (Dkt. 1167).  TT did not have any opportunity, let alone a full and fair opportunity, to respond to an argument to strike from the case one of its three infringement grounds.  Indeed, at the jury instruction conference, counsel did not even perceive that the issue of judgment as a matter of law was being argued and had no way of fully understanding CQG's position based on a few paragraphs in a bench memo filed shortly before that conference.

TT believes that this Court's decision was based entirely on the *eSpeed* litigation and the doctrine of collateral estoppel, and that this Court did not address the underlying merits of whether prosecution history estoppel ("PHE") actually bars TT from asserting the doctrine of equivalents ("DOE") in this case.  As such, TT was barred from arguing that: (1) there is no rebuttable presumption of prosecution history estoppel ("PHE") because the accused CQG products are outside the scope of the subject matter surrender by the amendments during prosecution of the patents-in-suit and (2) the *Festo* exceptions rebut any presumption of PHE.

Because the issue of collateral estoppel is purely a legal issue, and because there is no requirement that TT file either a Rule 50(b) or a Rule 59 motion to preserve the issue for appeal, TT will not repeat here all of the arguments it made previously in its motion for reconsideration (Dkt. 1176), that was denied by this Court.  Attached hereto is Dkt. 1176 for the Court's

convenience, which sets forth TT's arguments relating to collateral estoppel, which are incorporated by reference into the present motion. As TT explained in Dkt. 1176, collateral estoppel does not apply because the first three requirements for collateral estoppel are not met. First, the issues in this case (i.e., whether there is a rebuttable presumption of PHE with respect CQG's DOMTrader product and, if so, whether the rebuttable presumption is overcome by any *Festo* exception with respect to CQG's DOMTrader product) are not the same as the issue addressed in *eSpeed* (i.e., whether PHE barred TT from asserting the DOE against eSpeed's eSpeedometer product--a totally different product then DOMTrader). In addition, the issue of *Festo* exceptions was never considered in *eSpeed* for any product, let alone the accused products here. Second, the issues here were never litigated in *eSpeed*. Third, certain statements by Judge Moran in *eSpeed* (and relied upon by CQG) were not essential to the final judgment in *eSpeed*. Moreover, the Federal Circuit's ruling affirming Judge Moran made clear that the reasoning for finding PHE with respect to the eSpeedometer product does not apply to the facts here.

To the extent that this Court's March 13, 2015 order did actually address and consider the merits of any *Festo* exceptions and actually based its ruling on the lack of any such exceptions (and TT does not believe that this Court did), then TT respectfully requests that this Court grant TT's motion for a finding under Rule 50(b) that there is no PHE. The reason for this is simple. Even if there was a rebuttable presumption of PHE (and there is not as explained below), two of the *Festo* exceptions apply which would overcome any such presumption.[1] In particular, at trial, TT's expert provided unrebutted testimony that the Price Hold feature in DOMTrader would have been viewed as both unforeseeable and tangential to the purpose of the amendments by one of ordinary skill at the time of the amendments. Because these *Festo* exceptions apply, there can

---

[1] Although PHE ultimately is a legal question, there are underlying issues of fact including those associated with the *Festo* exceptions.

be no PHE.

Once PHE is removed, this Court should also grant TT's motion for a finding under Rule 50(b) that the accused DOMTrader product infringes under the DOE because, as set forth below, no reasonable jury could reach any other conclusion based on the evidence put forth at trial. At the very least, the Court should grant TT's alternative motion for a new trial under Rule 59 to permit the jury to consider infringement under the DOE (along with the associated damages resulting that infringement and willfulness).

## II. LEGAL STANDARDS

### A. Rule 50 And Rule 59

Judgment as a matter of law is appropriate under Rule 50(b) of the Federal Rules of Civil Procedure if, in light of the entire record, no reasonable jury could find to the contrary. *McMillan v. Stoll*, No. 09 C 1622, 2012 WL 707117 at *1 (N.D. Ill. Mar. 5, 2012)[2] (quoting *Schandelmeier v. Bartels v. Chicago Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011)).

Rule 59 permits a court to order a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1). In deciding whether to grant a new trial, district courts determine "whether the verdict was against the manifest weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Fujitsu Ltd. v. Tellabs Operations, Inc.*, 08 C 3379, 2013 WL 268607, at *4 (N.D. Ill. Jan. 24, 2013) (*quoting Frizzell v. Szabo,* 647 F.3d 698, 702 (7th Cir. 2011)); *see Shaps v. Provident Life & Accident Ins. Co.,* 244 F.3d 876, 885 (11th Cir.2001) (noting that a new trial may be ordered "when the interests of substantial justice are at stake").

Among other reasons, a court may grant a new trial because "a material issue was

---

[2] Unpublished cases are attached as Exhibit D.

improperly . . . withdrawn from a jury." *DeWitt v. New York State Hous. Fin. Agency*, 97 CIV. 4651 SAS, 1999 WL 672560, at *1 (S.D.N.Y. Aug. 26, 1999) (noting that "[i]n evaluating a Rule 59 motion, the trial judge's duty is essentially to see that there is no miscarriage of justice" (internal quotations omitted)).

## B.     The Law On Prosecution History Estoppel ("PHE")

The ultimate question of whether an accused product infringes under the doctrine of equivalents is one of fact for the jury to decide. *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1376 (Fed. Cir. 2001) ("[d]etermination of infringement by equivalents is an issue of fact, which after a jury trial we review for substantial evidence" (citations omitted)). However, before this ultimate question is reached, the court determines whether the patentee can "avail itself of the doctrine of equivalents" by determining whether PHE bars infringement under the doctrine of equivalents. *Id.* (*citing Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997) (reasoning that whether a patent's prosecution history estops the patentee from arguing an equivalent is an issue of law)).

For there to be a rebuttable presumption of PHE, three factors must be established: (1) an amendment to the claims that further limits the claim; (2) the amendment must have been for purposes of patentability; and (3) the accused product at issue must be within the scope of the surrender resulting from the amendment.[3] *Pacific Coast Marine Windshields Ltd. v. Malibu Boats. LLC,* 739 F.3d 694, 702 (Fed. Cir. 2014); *see also Intervet Inc*, 617 F.3d at 1291(stating the need for the court to conduct a comparison of the accused product with the claims as construed to determine whether the accused product falls within the scope of the subject matter

---

[3] TT does not contest that the *eSpeed* litigation already established factors 1 and 2.

surrendered). If all three of these factors are not present, then there is no PHE. If all three factors are present, then there is a rebuttable presumption of PHE. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002). When a rebuttable presumption exists, the patentee can bring forth evidence of one of the so-called "*Festo* exceptions" to rebut the presumption. *Id.* Like the application of PHE, the applicability of the *Festo* exceptions depends on analysis of the functionality of the accused products. *See Smithkline Beecham Corp. v. Excel Pharm., Inc.*, 356 F.3d 1357, 1362-64 (Fed. Cir. 2004); *Festo*, 344 F.3d at 1369.

Whether the patentee has rebutted the presumption that PHE applies is a question of law determined on a case-by-case basis. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1312 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 2270 (U.S. 2007) ("[w]hether a patent-holder has successfully rebutted the *Festo* presumption of the surrender of equivalents is a question of law"); *Honeywell Intern. Inc.*, 370 F.3d at 1143 (noting that "whether there was a presumption of estoppel is best dealt with on a case-by-case basis") (quotations omitted); *Ranbaxy Pharm. Inc.*, 350 F.3d at 1240 (same). Although the question of whether the patentee has successfully rebutted the presumption of PHE is indeed a question of law, this question naturally involves underlying issues of fact, "which may properly be decided by the court." *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301–02 (Fed. Cir. 2005) (recognizing that "[r]ebuttal of the presumption may be subject to underlying factual issues") (*citing Festo Corp.*, 344 F.3d at 1368 n. 3); *see also Duramed Pharma., Inc. v. Paddock Labs., Inc.*, 2011 WL 2905561, *3 (Fed. Cir. 2011) (concluding that the *Festo* exception of "[f]oreseeability is a question of law based on underlying issues of fact").

**III. IF THIS COURT WENT BEYOND COLLATERAL ESTOPPEL AND ACTUALLY BASED ITS RULING ON THE MERITS OF THE *FESTO* EXCEPTIONS, THEN TT MOVES UNDER RULE 50(b) THAT THERE IS NO PHE AND THAT CQG INFRINGES UNDER THE DOE**

As set forth above, TT believes that this Court's ruling that PHE applies to bar the DOE was based solely on collateral estoppel. Indeed, this Court stated: "[t]his Court finds that collateral estoppel bars TT from relitigating this issue [PHE] and from asserting that CQG's price column, which moves in response to some, but not all, changes in the inside market infringes under the doctrine of equivalents." Dkt. 1175, p. 2. TT also believes that this Court never addressed the underlying merits of PHE including whether any of the *Festo* exceptions presented by TT at trial were sufficient to rebut any possible presumption of PHE. Although the March 13, 2015 Order states that "TT presented only conclusory statements that the "evidence" supported TT's ability to rebut the presumption that the narrowing amendment disclaimed a price axis that moves in response to a change in the inside market," TT believes that this Court was merely referring to arguments made by TT's counsel at the hearing, and not the underlying evidence that was presented at trial. *Id.*

Assuming this Court's ruling was based solely on collateral estoppel, then there is no need for this Court to consider the rest of this brief, and TT will take the issue of collateral estoppel up on appeal. If, on the other hand, this Court's March 13, 2015 Order did actually address and consider the merits of the *Festo* exceptions and actually based its ruling on a lack of any such exceptions, then TT moves under Rule 50(b) that there is no PHE.

In particular, even if there was a rebuttable presumption of PHE (and there is not as shown in Section IV below), two of the *Festo* exceptions apply which would overcome any such presumption. The actual evidence that came in during the trial clearly shows that TT has established the applicability of the unforseeability and tangential *Festo* exceptions to overcome

the rebuttable presumption.

For example, TT's expert, Mr. Thomas, testified that in the conventional screens like the one shown in Figure 2 of the patents-in-suit, every time the inside market changed, the prices in the grid change, and it is the real value of those prices that are changing. *See e.g.*, Ex. A, Trial Tr. (Thomas) 658:4 –19. He explained further that in the DOMTrader with Price Hold, on the other hand, the label associated with the price may move, but the real price (which is associated with where the mouse was hovering) does not change. *Id.* As such, he concluded that the Price Hold is a "gimmick" and explained what he meant by that by giving an example of somebody switching the labels on a keyboard. *Id.* With that background, he went on to explain why one of ordinary skill in the art would have viewed the accused functionality, the DOMTrader with Price Hold, as unforeseeable at that time of the amendments. *Id.* at 679:17 – 681:6. For example, Mr. Thomas explained that in mission critical applications such as the trading screens covered by the claims, it would have been "unthinkable" to have "Price Hold" functionality in which the real price value associated with a cursor for order entry is different than the displayed price label. *Id.* For example, the idea of changing the label on a button in a mission critical application (e.g., a button in the cockpit of an airplane) would make no sense and would not be foreseeable.

Mr. Thomas also testified as to why one of ordinary skill in the art would have viewed such functionality as tangential to the purpose of the amendments. *Id.* at 681:6-21. The purpose of the amendment was to deal with situations like Figure 2 where when a displayed number changes, the real value of that cell changes. *See e.g., id.* Mr. Thomas explained that Price Hold functionality that keeps the real value the same, but moves the displayed price label, was tangential to this purpose. *Id.* CQG offered no proof to rebut any of this at trial. For example, Dr. Mellor said nothing to challenge Mr. Thomas' testimony on unforseeability or tangential.

*See generally id.;* Trial Tr. (Mellor) 1869 *et. seq.*

Accordingly, the evidence established at trial clearly shows that the accused Price Hold functionality was not foreseeable at the time of the amendments and was tangential to the purpose of the amendment. Thus, even if there is a rebuttable presumption of PHE, the undisputed evidence establishes by more than a preponderance of the evidence[4] that the presumption has been overcome and PHE does not apply to the accused DOMTrader product.

Once PHE is removed, this Court should also grant TT's motion for a finding under Rule 50(b) that the accused DOMTrader product infringes under the DOE because no reasonable jury could reach any other conclusion based on the evidence put forth at trial. Indeed, TT proffered detailed and overwhelming evidence proving that the DOMTrader infringes under the DOE, including a full analysis from its technical expert explaining how the "function/way/result" test and the "interchangeability" test were both met. CQG's alleged expert, on the other hand, did not even mention these tests, let alone rebut any of this testimony from TT's expert. Instead, he merely made the following vague and conclusory statement "[w]ell, something that moves can't be close enough to something that's required to not move. So they can't be equivalent." Ex. A, Trial Tr. (Mellor) at 1911:3-5. This falls woefully short of rebutting TT's DOE case and cannot support a verdict of non-infringement. In this event, there would also need to be a new trial on related issues, such as damages and willfulness. At the very least, the Court should grant TT's alternative motion for a new trial under Rule 59 to permit the jury to consider infringement under the DOE (along with the associated damages resulting from that infringement and willfulness).

---

[4] *See Integrated Tech. Corp. v. Rudolph Technologies, Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013) *cert. denied*, 134 S. Ct. 2873 (2014) ("A patentee bears the burden to rebut the presumptive application of prosecution history estoppel by establishing one of three exceptions by a preponderance of the evidence").

## IV.  IF THERE IS NO COLLATERAL ESTOPPEL FOR ANY REASON, TT PREVAILS ON INFRINGEMENT UNDER THE DOE

TT notes for the record that if the merits are considered, it is clear that PHE does not apply for multiple reasons and that CQG infringes under the DOE.  In other words, if either aspect of this Court's collateral estoppel ruling is wrong (scope of surrender or the *Festo* exceptions), TT prevails on DOE.  As already noted above in Section III, the *Festo* exceptions result in no PHE even if there is a rebuttable presumption.

In addition, on the merits, there is no rebuttable presumption of PHE in the first place because the accused DOMTrader is not within the scope of what was surrendered by the relevant amendments made during the prosecution of the patents-in-suit. The amendments merely require price levels that do not move in response to *a* change in the inside market, not price levels that do not move in response to *every* change in the inside market.  Ex. A, Trial Tr. (Thomas) 678:8 - 679:16.  The Court has already noted that this is the express language of the amendments.  *Id.* at 1946:1-3; Dkt. 1175 at 2.  This means that what is surrendered by the amendment is a screen in which the prices move in response to *every* change in the inside market.  Ex. A, Trial Tr. (Thomas) 678:10-23.  TT's technical expert at trial (Mr. Thomas) illustrated this with demonstratives at 679:1-16, which show a screen like Figure 2 of the patents in suit (where the prices change with every change in the inside market) as what is surrendered and the CQG's DOM Trader as not being surrendered.  Ex. B (PTX 5648).  Importantly, CQG's expert, Dr. Mellor, admitted that the amendments (which govern the scope of surrender) **only require that the prices do not move in response to *a* change in the inside market**.  *Id.* at 1945-22 – 1946:6; Ex. C (Expert Report of Dr. Mellor), ¶¶ 145-47.  Moreover, he admitted that there is no requirement that the prices do not move in response to *every* change in the inside market.  *Id.* CQG has also admitted that the Market Mode with Price Hold operates such that the prices do

not move in response to at least one change in the inside market.[5] Ex. A, Trial Tr. (Mellor) 1926:7 – 1927:13. These admissions are determinative because the accused product indisputably meets the language of the amendment and is not surrendered. Accordingly, because the accused DOMTrader product is not within the scope of what was surrendered in the amendments, there is no rebuttable presumption of PHE.

As explained in Section III above, without PHE, CQG infringes under the DOE because the evidence is clear that the relevant accused products are equivalent.

## V.     CONCLUSION

This Court's ruling was based entirely on collateral estoppel, a pure legal issue that TT will take up on appeal. However, to the extent this Court based its decision on the underlying merits of PHE and found a lack of *Festo* exceptions, then this Court should grant TT Rule 50(b) motion and find that there is no PHE based on the undisputed evidence at trial that two of the *Festo* exceptions apply, which overcomes any such presumption of PHE. Once PHE is removed, this Court should also grant TT's motion for a finding under Rule 50(b) that the accused DOMTrader product infringes under the DOE because no reasonable jury could find otherwise based on the evidence at trial. Alternatively, TT moves under 59 for a new trial to permit the jury to consider infringement under the DOE (along with the associated damages resulting that infringement and willfulness).

---

[5] Indeed, the evidence established that typically the prices in that product do not move when the inside market changes. *Id.* at 1538:12-22.

Respectfully submitted,

Date: April 15, 2015          By:     s/ Cole B. Richter
                                      Leif R. Sigmond, Jr. (ID No. 6204980)
                                      (sigmond@mbhb.com)
                                      Matthew J. Sampson (ID No. 6207606)
                                      (sampson@mbhb.com)
                                      Michael D. Gannon (ID No. 6206940)
                                      (gannon@mbhb.com)
                                      S. Richard Carden (ID No. 6269504)
                                      (carden@mbhb.com)
                                      James C. Gumina (ID No. 6195604)
                                      (gumina@mbhb.com)
                                      Brandon J. Kennedy (ID No. 6306310)
                                      (kennedy@mbhb.com)
                                      Cole B. Richter (ID No. 6315686)
                                      (richter@mbhb.com)
                                      **McDonnell Boehnen Hulbert & Berghoff LLP**
                                      300 South Wacker Drive
                                      Chicago, Illinois 60606
                                      Tel.: (312) 913-0001
                                      Fax: (312) 913-0002

                                      Steven F. Borsand (ID No. 6206597)
                                      (Steve.Borsand@tradingtechnologies.com)
                                      **Trading Technologies International, Inc**.
                                      222 South Riverside
                                      Suite 1100
                                      Chicago, IL 60606
                                      Tel: (312) 476-1000
                                      Fax: (312) 476-1182

                                      **Attorneys for Plaintiff,**
                                      **TRADING TECHNOLOGIES**
                                      **INTERNATIONAL, INC.**

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing TT'S MOTION FOR JUDGEMENT AS A MATTER OF LAW CONCERNING PHE AND INFRINGEMENT UNDER THE DOE AND FOR A NEW TRIAL was served on April 15, 2015 as follows:

***Via Filing Via this Court's CM-ECF System, which caused a copy to be served on all registered users and Via Email:***

***Counsel for CQG, Inc., and CQGT, LLC:***

Adam G. Kelly
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
akelly@loeb.com

William Joshua Voller III
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
wvoller@loeb.com

Laura A. Wytsma
Loeb & Loeb LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA 90067
lwytsma@loeb.com

<u>s/ Cole B. Richter</u>